**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorney for Plaintiffs and the Proposed Class***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA HAMMOCK, SHERRY BENTLEY and LINDA LOVE, on behalf of themselves, all others similarly situated, and the general public,<br><br>        Plaintiffs,<br><br><br><br>NUTRAMARKS, INC.; NUTRAPURE, INC., and NUTRACEUTICAL CORPORATION,<br><br>        Defendants. | Case No.: **'15CV2056 BTM NLS**<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Cynthia Hammock, Sherry Bentley, and Linda Love ("Plaintiffs") by and through their attorneys of record, bring this action on behalf of themselves, all others similarly situated, and the general public, against Defendants NutraMarks, Inc., NutraPure, Inc., and the Nutraceutical Corporation. (collectively "Defendants").

## INTRODUCTION

1.     Defendants are the manufacturers and distributors of NatraBio® homeopathic products that are falsely and deceptively labeled in that the products do not work as advertised. This complaint concerns Defendants' NatraBio® homeopathic products known as "Smoking Withdrawal," "Leg Cramps," "Restless Legs," "Cold and Sinus Nasal Spray," "Allergy and Sinus," "Children's Cold and Flu," and "Flu Relief Spray." (collectively the " NatraBio® Products").

2.     Defendants deceptively market the NatraBio® homeopathic products by claiming that the products can provide relief from a variety of ailments— everything from colds, flus, allergies, pain, tobacco cravings, and leg cramps.   However, Defendants do not disclose to consumers that the purported "active ingredients" in the NatraBio® products are so diluted that they are virtually non-existent. As a matter of established scientific principle, the NatraBio® products cannot possibly be inherently effective at providing relief for any type of symptoms in any human being. Indeed, the NatraBio® products are essentially just hyper-diluted "sugar pills." They work no better than a placebo.

3.     Additionally, Defendants market the NatraBio® Products as "Natural Homeopathic Medicine" made from "all natural" ingredients. However, several of the NatraBio® Products contain one or more artificial or synthetic ingredients.

## JURISDICTION AND VENUE

4.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Class of Plaintiffs are citizens of states different

than Defendants.  Further, greater than two-thirds of the Class members reside in states other than the state in which Defendants are incorporated or have their principal places of business.

5.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff Hammock and Plaintiff Bentley are residents of California, Plaintiff Love is a resident of Florida, Defendants maintain their principal places of business in Utah, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.    In addition, this Court has original jurisdiction over the federal claim under the Magnuson-Moss Warranty Act pursuant to 28 U.S.C. § 1331.

7.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because many of the acts and transactions, including some of the purchases and sales giving rise to this action, occurred in this district and because Defendants (i) are authorized to conduct business in this district, (ii) have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution and sale of their products in this district; (iii) do substantial business in this district; (iv) advertise to consumers residing in this district, and (v) are subject to personal jurisdiction in this district.

## THE PARTIES

9.    Plaintiff Cynthia Hammock is a resident of Lemon Grove, California who purchased Defendants' NatraBio® "Smoking Withdrawal" Product.

10.    Plaintiff Sherry Bentley is a resident of Sacramento, California who purchased Defendants' NatraBio® "Leg Cramps" and "Restless Legs" Products.

11.    Plaintiff Linda Love is a resident of Middleburg, Florida who purchased Defendants' NatraBio® "Cold and Sinus Nasal Spray," "Allergy and Sinus," "Children's Cold and Flu Relief," and "Flu Relief" Products.

12.     Defendant Nutraceutical Corporation is a Delaware corporation that maintains its principal place of business at 1400 Kearns Blvd. 2nd Floor, Park City, Utah 84060. Defendant Nutraceutical corporation is a manufacturer and distributor of the NatraBio® products. According to its website, Nutraceutical Corporation acquired the NatraBio® brand in 2007. The NatraBio® product line is part of Nutraceutical Corporation's "Nature's Cures Collection" of products.[1]

13.     Defendant NutraMarks, Inc. is a Delaware corporation that maintains its principal place of business in Park City, Utah. Defendant NutraMarks, Inc. is a manufacturer and distributer of the NatraBio® products and is the owner of the NatraBio® trademark. According to trademark records, Defendant NutraMark, Inc. maintains its principal place of business at 1500 Kearns Boulevard, Suite B-200, Park City, Utah 84060. The NatraBio® website is owned and operated by Defendant NutraMarks, Inc.[2] Moreover, Defendant NutraMarks, Inc. has admitted in a recent court pleading that it is a "wholly-owned subsidiary of Nutraceutical Corporation and owns the trademark rights and assets used by Nutraceutical Corporation."[3]

14.     Defendant NutraPure, Inc. is a Delaware corporation that maintains its principal place of business at 1500 Kerns Boulevard, Ste. B-200, Park City, Utah 84060. Defendants NutraPure, Inc. and NutraMarks, Inc. share the same address. Based on information and belief, Defendant NutraPure, Inc. is involved in the advertising, marketing, distribution, and sales of the NatraBio® products. According

---

[1] http://www.nutraceutical.com/collections/natures-cures/

[2] *See* NatraBio.com/terms-condition/ ("This website, and the various content, features and services offered on this website (collectively, the 'Site'), is owned and/or operated by and/or used under license from NutraMarks, Inc.").

[3] *See* Complaint, Dkt. No. 2, *Nutraceutical Corp. v. Provide Nutrition, LC*, No. 2:15-cv-00579-BCW (D. Utah Aug. 7, 2015).

to an SEC filing made by Defendant Nutraceutical Corporation, Defendant NutraPure, Inc. is a subsidiary of Nutraceutical Corporation.[4]

**Agency**

15.   At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting within the course and scope of such agency.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

**Aiding and Abetting**

16.   Defendants and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs and the Classes, as alleged herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

**Alter Ego Liability**

17.   Defendants and each of them, are alter egos of the others to the extent that there is such a unity of interest and ownership that the individuality, or separateness, of the defendants has ceased and adherence to the fiction of the separate existence of Defendants would sanction a fraud or promote an injustice. In addition to the fact that Defendant Nutramarks and Defendant Nutrapure share an office location, all Defendants use the corporate form as a mere shell, instrumentality, or conduit for a single venture of the business.

---

[4] *See* Nutraceutical SEC Form 10-K For the Fiscal Year Ended September 30, 2014, *available at* www.sec.gov/Archives/edgar/data/1050007/000104746914009431/a2222200zex21_1.htm

# FACTUAL BACKGROUND

## The NatraBio® Products

18.   The NatraBio® brand was first launched in 1979 and was acquired by Defendant Nutraceutical Corporation and its named Defendant subsidiaries in or around 2007.  Defendants claim that "the NatraBio® brand believes that homeopathic medicines provide one of the most natural and effective for the treatment of illness, the relief of symptoms and the maintenance of good health."[5]



19.   When NatraBio first started, the company sold homeopathic remedies in tincture jars that were designed to "stimulate the body's healing mechanism."



**Natra-Bio Advertisement in *Mother Jones Magazine*, April 1982.**

---

[5] http://www.natrabio.com/about-us/
[6]

20.    Through clever marketing efforts of Defendants, the NatraBio® line is now deceptively designed to mimic conventional over-the-counter medicines. NatraBio® now has an entire range of products "from fully medicated compressed tablets that melt in the mouth to liquids, cough syrups, throat and nasal sprays, and topical creams."  Defendants contend that all of the NatraBio® homeopathic products "are formulated to provide fast acting symptom relief and to be a natural alternative for every medicine cabinet."

21.    Defendants' advertising of the NatraBio® products is also more suggestive and claims that the products can alleviate a variety of symptoms from ailments like colds, flus and allergies. For example, Defendants' website claims that NatraBio® makes "natural products for all of your cold and flu needs."





**Screenshots from Natrabio.com**

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

22.   Defendants' comprehensive marketing scheme makes NatraBio a well-recognized brand in many retail stores. But Defendants know that the NatraBio® Products cannot live up to the promised advertising and are aware of the fact that all credible scientific evidence shows that homeopathy is ineffective. Defendants have only one goal in mind— reaping enormous profits from unwary consumers.

**History of Homeopathy**

23.   Homeopathy was invented in the late 18th Century by a German Physician named Samuel Hahnemann.[7] Homeopathy seeks to stimulate the body's ability to heal itself by giving very small doses of highly diluted substances.  However, there is "little evidence" that homeopathy is effective, much less that people understand homeopathic dilution principles.[8]

24.   Homeopathy is premised on two main principles; the principle of similars and the principle of dilutions.  Under the "principle of similars" a disease can be cured by a substance that produces similar symptoms in healthy people.   Thus, homeopathic drugs are intended to work by causing "aggravation," or a temporary worsening of symptoms initially, a fact that is not communicated to consumers.

25.   Under the "principle of dilutions" the more diluted an ingredient is, the more effective it becomes.[9]   However, there is a very low probability that even a single molecule of the original substance is present in the Products. For example, a typical homeopathic treatment is diluted to a level of around 30x. This means there is one molecule of the substance in a million trillion trillion ($10 \wedge 30$) molecules of water. At that dilution level, one would need to drink 8,000 gallons of water to get one molecule of the substance. Some homeopathic solutions contain a dilution level of 30c

---

[7] *See Samuel Hahnemann: German physician*, ENCYCLOPEDIA BRITANNICA ONLINE, *available at* http://www.britannica.com/EBchecked/topic/251691/Samuel-Hahnemann.

[8] *See Homeopathy*: *An Introduction*, NATIONAL CENTER FOR COMPLEMENTARY AND INTEGRATIVE HEALTH, *available at* nccam.nih.gov/sites/nccam.nih.gov/files/homeopathy.pdf.

[9] *Id.*

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

(100^30). But there is not enough water in the solar system to accommodate that dilution level.[10]

26.    Homeopathy was invented before modern knowledge of molecular science, which is completely inconsistent with the homeopathic principal of dilutions. To overcome this flaw, some modern homeopaths suggest that homeopathy is effective because of "water memory." These homeopaths believe that water somehow "remembers" the shape of the original substance.[11]

27.    Historically, homeopathic remedies were thought to be effective through the method of "provings." Using this method, healthy individual would ingest or otherwise be exposed to a substance and keep a diary for days or weeks afterwards listing every physical and emotional experience they had. These diaries were then evaluated for patters of similar symptoms.

28.    Modern homeopathic products are actually still based on early "provings" that were conducted by Samuel Hahneman himself and published in his *Materia Medica Pura*. However, subsequent efforts to demonstrate consistency or reproducibility of homeopathic provings have been unsuccessful.[12]

---

[10] *See* Christopher Wanjek*, Homeopathy and the Folly of Water Memory*, Live Science (Aug. 6, 2007), *available at* http://www.livescience.com/1738-homeopathy-folly-watery-memory.html

[11] *Id.* ("Confronted with pesky laws of chemistry, homeopaths turned to skirting the laws of physics, The water, they reason, must remember the shape of the medicine and somehow etch this onto a pill.").

[12] *See Overview of Homeopathy*, Science Based Medicine, *available at* https://www.sciencebasedmedicine.org/reference/homeopathy/ ("Homeopathic "provings" are a method of establishing what a homeopathic remedy contains and how diluted it should be. It is a sort of "in-house" scientific method, and a poor one: provings contains no controls for bias or any method for separating the ordinary experiences of daily life from true symptoms caused by the substance being tested. Many of the provings used to guide homeopathic treatment today were conducted by Samuel Hahneman himself. Subsequent efforts to demonstrate consistency or reproducibility of homeopathic provings have been unsuccessful.")

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

**Basic Science Proves that Homeopathy Is Ineffective**

29.    Because the ingredients in homeopathic products are so hyper-diluted, science and commonsense proves that homeopathy is ineffective at curing any type of ailment in any human being.

30.    An overwhelming majority of experts in the scientific community agree that the homeopathic theory of dilutions is inconsistent with basic science. Recently, Australia's National Health and Medical Research Council conducted "an extensive analysis of 225 controlled studies and some 1,800 papers— ranging from evidence provided by homeopathy interest groups to government guidelines."  The evidence in the study was also assessed by an independent contractor to avoid bias.  The report concluded that "No good-quality, well-designed studies with enough participants for a meaningful result reported either that homeopathy caused greater health improvements than placebo, or caused health improvements equal to those of another treatment."[13]

31.    Likewise, a UK House of Commons report that was released in 2010 similarly found that homeopathic treatments were ineffective.[14] The report concluded, "that the principle of like-cures-like is theoretically weak. It fails to provide a credible physiological mode of action for homeopathic products. We note that this is the settled view of medical science…. Even if water could retain memory of previously dissolved substances we know of no explanation for why the sugar-based homeopathic pills routinely dispensed would retain such a memory. ***We consider the notion that ultra-dilutions can maintain an imprint of substances previously dissolved in them to be scientifically implausible.***"

---

[13] http://www.iflscience.com/health-and-medicine/homeopathy-ineffective-study-concludes

[14] *See Science and Technology Committee- Fourth Report Evidence Check 2: Homeopathy*, U.K. HOUSE OF COMMONS (2009), *available at* http://www.publications.parliament.uk/pa/cm200910/cmselect/cmsctech/45/4502.htm

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

32.    Many medical experts even believe that the practice of homeopathy is unethical.[15] Dr. David M. Shaw of the University of Glasgow has noted that homeopathy "can involve deceiving the patient; indeed, if the only effect is placebo, it is possible that deception is essential to the practice of homeopathy."[16]

33.    A publication by the *American Veterinary Medical Association* has likewise stated the following:

> The principal that a therapeutic substance becomes more potent the lower the dose, and that it can still be active even when it contains only the diluent (water), is inconsistent with the fundamental principals of chemistry and physiology underlying all of scientific medicine. A revolution in basic science would need to take place for this idea to have any possibility of being correct, and the inconsistent and low-quality studies that have attempted to validate homeopathic theory do not justify such a revolution.[17]

**Regulation of Homeopathic Drugs in the United States**

34.    Homeopathic drugs sold in the United States must comply with the minimal requirements set forth in the Food and Drug Administration's Compliance Policy Guide ("CPG") § 400.400. However, the FDA has cautioned that compliance with the CPG "does not establish that [a homeopathic drug] has been shown by appropriate means to be safe, effective, and not misbranded for its intended use." CPG § 400.400. The United States FDA has also publically stated that it "is not aware of scientific evidence to support homeopathy as effective."[18]

---

[15] *See, e.g., Kevin Smith, Homeopathy is Unscientific and Unethical*, BIOETHICS, ISSN 0269-9702, *available at* http://www.dcscience.net/Smith-response.pdf

[16] *See* Dr. David M. Shaw*, Editorial, Homeopathy is where the harm is: five unethical effects of funding unscientific 'remedies,'* JOURNAL OF MEDICAL ETHICS VOL. 36, ISSUE 3 (2010), *available at* http://jme.bmj.com/content/36/3/130.full.

[17] *White Paper: The Case Against Homeopathy,* AMERICAN VETERINARY MEDICAL ASSOCIATION, *available at* https://www.avma.org/About/Governance/Documents/2014W_2013W_Resolution3_Attch1.pdf

[18] *See* FDA Online Label Repository, *available at* http://labels.fda.gov/.

35.   On August 21, 2015, the Federal Trade Commission Bureau of Consumer Protection ("FTC") recommended that the FDA reconsider its regulatory framework for homeopathic medicines. Significantly, the FTC stated that "evidence suggests that a significant percentage of consumers do not understand homeopathic drugs, how the FDA regulates homeopathic drugs or the level of scientific evidence supporting homeopathic claims."[19] The FTC's comments were also based on consumer perception research clearly indicating that reasonable consumers are misled by homeopathic products bearing similar labeling claims as those found on the NatraBio® Product labels.

**Class Action Lawsuits Bring Truth to Homeopathy**

36.   On August 26, 2011, the non-profit group, Center for Public Inquiry, petitioned the FDA to require homeopathic drug manufacturers to undergo the same efficacy requirements as other OTC products, and to label their drugs with a disclaimer that states: "The FDA has not determined that this product is safe, effective, and not misbranded for its intended use."  *See Gallucci v. Boiron, Inc.*, Case No. 3:11-CV-2039 JAH (S.D. Cal.), Dkt. No. 93-1 at p. 18.

37.   As a result of class action litigation, such as the *Gallucci* case, *supra*, other homeopathic drug manufacturers have voluntarily agreed to implement a FDA disclaimer similar to the one noted above, along with additional injunctive relief, such as a dilution disclaimer and explanation of homeopathic dilution for consumers.  *See, e.g., Gallucci*, Dkt. No. 105 at pp. 13-15; Dkt. No. 125 at pp. 9-10.  Thus, even those in the industry recognize a need to more truthfully label homeopathic drugs for the average consumer.  *See id.*

---

[19]*See* Comments of the Staff of the Federal Trade Commission, *In Response to a Request for Comments Related to its Public Hearing on Homeopathic Product Regulation: Evaluating the Food and Drug Administration's Regulatory Framework After a Quarter-Century*, 80 Fed. Reg. 16327 (Mar. 27, 2015), Submitted on August 21, 2015.

38.    Several class action lawsuits have been filed against homeopathic manufactures and many courts have overwhelmingly found that the classes are easily certifiable. *See, e.g., Allen v. Similasan Corp.*, ---F.R.D.---, 2015 WL 1534005 (S.D. Cal. 2015); *Allen v. Hylands*, 300 F.R.D. 643 (C.D. Cal. 2014); *Forcellati v. Hylands*, No. 12-cv-1983, 2014 WL 1410264 (C.D. Cal. April 9, 2014).

39.    A recent SEC filing even shows that Defendant Nutraceutical Corporation is aware of recent lawsuits against other homeopathic manufactures. Defendant boldly brushes off these allegations and states to investors that "plaintiff's actions under state consumer protection laws for lack of substantiation have been allowed to proceed. Ignoring the unique character of homeopathic drug products, plaintiff's claims in these actions have been based on the evidence standard applied to conventional drugs."[20] However, Defendant Nutraceutical Corporation does not acknowledge that (a) the NatraBio® products are intentionally marketed and sold like conventional OTC drugs, and (b) many lawsuits against homeopathic drug manufacturers allege that the labels on the products are actually false rather than just unsubstantiated.

40.    Likewise, this class action seeks to expose the truth about the NatraBio® Products and provide redress to consumers by showing that the advertised labeling claims on the NatraBio® Products described below can be proven false and misleading by basic scientific principles.

## SPECIFIC MISREPRESENTATIONS

41.    Despite the overwhelming amount of evidence showing that homeopathy is ineffective at curing any type of ailment in any human being, Defendants continue to manufacture and sell a variety of NatraBio® homeopathic products that make false

---

[20] *See* Nutraceutical SEC Form 10-K For the Fiscal Year Ended September 30, 2014, *available at* www.sec.gov/Archives/edgar/data/1050007/000104746914009431/a2222200z10k. htm#de40201_item_1b._unresolved_staff_comments

and deceptive statements on their labels about their abilities to alleviate certain symptoms.

42.    Each of Defendants' false labeling claims are detailed below:

**A.    NatraBio® Smoking Withdrawal**



43.    Beginning on or around January of 2011, Plaintiff Hammock purchased the NatraBio® Smoking Withdrawal Product on multiple occasions from Sprouts and other natural food stores in or near La Jolla, California. Plaintiff Hammock paid approximately $6.00 for each product that she purchased.

44.    Defendants advertise NatraBio® "Smoking Withdrawal" Product by putting false and misleading claims on the label, stating or suggesting that the Product provides "natural relief for the symptoms of: Tobacco & Cigarette Cravings, Nervous Tension, Irritability," and that the Product "helps detoxify." Defendants further claim that the NatraBio® Smoking Withdrawal Product is an "advanced formulation" that is "non-habit forming" and provides "fast, effective symptom relief." Moreover, Defendants claim that the Product is "Natural Homeopathic Medicine" made from "all

natural ingredients" and that the Product is an "innovative natural health product formulated and manufactured to pharmaceutical standards."

45.   On the Smoking Withdrawal Product's label, Defendants additionally make the following misleading claims about the ingredients in the Product:

- "Abies nigra 10x"…………………… "respiratory symptoms."
- "Lobelia inflate 10x"………………… "reduces ill effects of nicotine."
- "Nicovap 10x, 14x, 24x, 30x"……….."tobacco product detoxification."
- "Nux vomica 10x"…………………….."reduces tobacco cravings."
- "Ignatia amara 14x"……………………"reduces nervous tension."

46.   Plaintiff Hammock read and relied on each of the quoted statements above in paragraphs 40 through 41 that are found on the NatraBio® "Smoking Withdrawal" packaging.

47.   The Product did not provide the benefits, uses and qualities for Plaintiff Hammock, as advertised by Defendants because the Product cannot provide the advertised relief to any human being as a matter of sound scientific principles.

48.   Plaintiff Hammock would consider buying the Product again in future if it was effective as advertised.

49.   Plaintiff Hammock seeks justice for herself and for similarly-situated consumers of NatraBio® "Smoking Withdrawal."

**B.   NatraBio® Leg Cramps**



*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

50.   In or around July of 2013, Plaintiff Bentley purchased the NatraBio® "Leg Cramps" Product on at least one occasion form a Wal-Mart store in or near Sacramento, California. Plaintiff Bentley paid approximately $5.00 for the product.

51.   Defendants falsely advertise and market the NatraBio® Leg Cramps Product by putting false and misleading claims on the label, stating or suggesting that the Product provides "natural relief for the symptoms of: Leg Cramps, Muscle Pain & Spasms, Cramps in the Calves and Feet, [and] Night Cramps and Pain." Defendants further claim that the NatraBio® Leg Cramps Product is an "advanced formulation" that is "non-habit forming" and provides "fast, effective symptom relief." Moreover, Defendants claim that the Product is "Natural Homeopathic Medicine" made from "all natural ingredients" and that the Product is an "innovative natural health product formulated and manufactured to pharmaceutical standards."

52.   On the NatraBio® Leg Cramps product label, Defendants additionally make the following misleading claims about the ingredients in the Product:

- "Chininum Sulphuricum 4x................"neuralgia, tearing leg pains."
- "Colocynthis 4x"......................... "contaction of muscles, leg cramps"
- "Gnaphalium polycephalum 4x"......... "frequent cramps in legs and feet"
- "Calcarea Carbonica 6x, 12x, 30x...... "cramps in calves at night"
- "Lycopodium clavatum 6x".............. "cramps in calves, sciatica"
- "Magnesia Phosphorica 6x".............. "severe cramps in calves"
- "Rhus toxicodendron 6x, 12x, 30x"...... "cramps in calves, tearing pains"
- "Cuprum Metallicum 12x"................. "cramps in legs and feet"

53.   Plaintiff Bentley read and relied on each of the quoted statements above in paragraphs 45 through 46 that are found on the NatraBio® "Leg Cramps" packaging.

54.   The Product did not provide the benefits, uses and qualities for Plaintiff Bentley, as advertised by Defendants because the Product cannot provide the advertised relief to any human being as a matter of sound scientific principles.

55.   Plaintiff Bentley would consider buying the Product again in future if it was effective as advertised.

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

56.    Plaintiff Bentley seeks justice for herself and for similarly-situated consumers of NatraBio® Leg Cramps.

**C.    NatraBio® Restless Legs**



57.    In or around July of 2013, Plaintiff Bentley purchased the NatraBio® "Restless Legs" Product on at least one occasion from a Wal-Mart store in or near Sacramento, California.  Plaintiff Bentley paid approximately $6.00 for the Product.

58.    Defendants falsely advertise and market the NatraBio® "Restless Legs" Product by putting false and misleading claims on the label, stating or suggesting that the Product provides "natural relief for the symptoms of: Restlessness, Jerking & Twitching, Constant Urge to Move, [and] Tingling." Defendants further claim that the NatraBio® "Restless Legs" Product is an "advanced formulation" that is "non-habit forming" and provides "fast, effective symptom relief." Moreover, Defendants claim that the Product is "Natural Homeopathic Medicine" made from "all natural

ingredients" and that the Product is an "innovative natural health product formulated and manufactured to pharmaceutical standards."

59. On the NatraBio® "Restless Legs" product label, Defendants additionally make the following misleading claims about the ingredients in the Product:

• "Arsenicum Album 12x"…………..."desire to move feet constantly"

• "Chamomile 6x"…………………..."urge to get up and walk around"

• "Causticum 12x"………………….."restless legs at night"

• "Lycopodium clavatum 6x"………."weakness, numbness, leg cramps"

• "Palladium 12x"…………………    "heavy limbs, darting pains, restlessness"

• "Platina 12x"……………………..."restlessness, tingling legs"

• "Zincum Metalicum 12x"………….."twitching and jerking of legs"

60. Plaintiff Hammock read and relied on each of the quoted statements above in paragraphs 54 through 55 that are found on the NatraBio® "Restless Legs" packaging.

61. The Product did not provide the benefits, uses and qualities for Plaintiff Bentley, as advertised by Defendants because the Product cannot provide the advertised relief to any human being as a matter of scientific principles.

62. Plaintiff Bentley would consider buying the Product again in future if it was effective as advertised.

63. Plaintiff Bentley seeks justice for herself and for similarly-situated consumers of NatraBio® Restless Legs.

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

1

2   **D.     NatraBio® Cold and Sinus Nasal Spray**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17       64.     Plaintiff Love purchased the NatraBio® "Cold and Sinus Nasal Spray

18   Product" on several occasions from a Wal-Mart, Sam's, and various health food stores

19   in or near Middleburg, Florida beginning on or around 2012. Plaintiff Love paid

20   approximately $8.00 for each purchase of the product.

21       65.     Defendants falsely advertise and market the NatraBio® "Cold and Sinus

22   Nasal Spray" Product by putting false and misleading claims on the label, stating or

23   suggesting that the Product provides relief for the symptoms of: "Nasal Congestion,

24   Sinus Pressure, Headache, Sneezing, [and] Runny Nose." Defendants further claim

25   that the NatraBio® "Cold and Sinus Nasal Spray" Product is a "continuous use

26   formula." Moreover, Defendants claim that the Product is "Natural Homeopathic

27   Medicine" that is "formulated and manufactured utilizing natural ingredients in

28   accordance with strict FDA pharmaceutical standards to ensure safety and purity."

66.   On the NatraBio® "Cold and Sinus Nasal Spray" product label, Defendants additionally make the following misleading claims about the ingredients in the Product:

• "Aconitum napellus 6x"…….…..…. "sudden onset of cold symptoms"

• "Adrenalinum 6x"………………… "decongestant"

• "Allium cepa 6x"………………….. "runny nose, sinus congestion"

• "Echinacea angustifolia 6x"………. "cold and sinus symptoms"

• "Euphorbium officinarum 6x"…… "sinus congestion and pain"

• "Hydrastis canadensis 6x"………… "sinus congestion, runny nose"

• "Kali bichromicum"…………………."cold symptoms, congestion"

• "Phytolacca decondra 6x"………..…. "cold, cough, sore throat"

• "Sticta pulmonaria 6x"……………..…"cold, cough, headache"

67.   Plaintiff Hammock read and relied on each of the quoted statements above in paragraphs 61 through 62 that are found on the NatraBio® "Cold and Sinus Nasal Spray" packaging.

68.   The Product did not provide the benefits, uses and qualities for Plaintiff Love, as advertised by Defendants because the Product cannot provide the advertised relief to any human being as a matter of scientific principles.

69.   Plaintiff Love would consider buying the Product again in future if it was effective as advertised.

70.   Plaintiff Love seeks justice for herself and for similarly-situated consumers of NatraBio® Cold and Sinus Nasal Spray.

**E.      NatraBio® Allergy and Sinus**



71.    Ms. Love purchased the NatraBio® Allergy and Sinus Product on several occasions from a Wal-Mart, Sam's, and various health food stores in or near Middleburg, Florida beginning on or around 2012. Plaintiff Love paid approximately $6.00 for each purchase of the product.

72.    Defendants falsely advertise and market the NatraBio® "Allergy and Sinus" Product by putting false and misleading claims on the label, stating or suggesting that the Product provides "natural relief for the symptoms of: Sinus Pressure & Pain, Runny Nose, Water Eyes, Nasal Congestion, [and] Hay Fever Allergies." Defendants further claim that the NatraBio® "Allergy and Sinus" Product is an "advanced formulation" that is "non-habit forming" and provides "fast, effective symptom relief." Moreover, Defendants claim that the Product is "Natural Homeopathic Medicine" made from "all natural ingredients" and that the Product is an

"innovative natural health product formulated and manufactured to pharmaceutical standards."

73.    On the "Allergy and Sinus" Product's label, Defendants additionally make the following misleading claims about the ingredients in the Product:

• "Chamomilla 1x"………………….   "allergies, headache, runny nose, cough"

• "Echinacea angustifolia"………….. "allergic reactions, allergies"

• "Allium cepa 6x"………………  " sneezing, runny nose, hay fever, water eyes"

• "Ambrosia artemisiaefolia"……..… "hay fever, stuffy head and nose"

• "Euphorbium officinarum 6x"………"sinus congestion and pain"

• "Gelsemium sempervirens 6x"…….. " headache, sneezing, runny nose"

• "Sanguinaria canadensis 6x"…… "hay fever, runny nose, burning eyes, cough"

• "Sticta pumonaria 6x"…………. "headache, stuffiness, hay fever"

• "Kali lodatum 9x"…… "sinus headache, runny nose, sneezing, and stuffiness"

74.    Plaintiff Love read and relied on each of the quoted statements above in paragraphs 68 through 69 that are found on the NatraBio® "Allergy and Sinus" packaging.

75.    The Product did not provide the benefits, uses and qualities for Plaintiff Love, as advertised by Defendants because the Product cannot provide the advertised relief to any human being as a matter of scientific principles.

76.    Plaintiff Love would consider buying the Product again in future if it was effective as advertised.

77.    Plaintiff Love seeks justice for herself and for similarly-situated consumers of NatraBio® "Allergy and Sinus."

1  **F.  NatraBio® Children's Cold and Flu Relief**



78.  Plaintiff Love purchased the NatraBio® Children's Cold and Flu Product on at least two occasions from a Wal-Mart, Sam's, and various health food stores in or near Middleburg, Florida beginning on or around 2012. Ms. Love paid approximately $5.00 for each purchase of the product.

79.  Defendants falsely advertise and market the NatraBio® Children's Cold and Flu Product by putting false and misleading claims on the label, stating or suggesting that the Product provides "relief for: Congestion, Sore Throat, Nausea and Vomiting, Sneezing and Runny Nose, [and] Headache and Body Aches." Moreover, Defendants claim that the Product is "Natural Homeopathic Medicine" and is of a "quality parents can trust."

80.  Plaintiff Love read and relied on each of the quoted statements above in paragraph 75 that are found on the NatraBio® "Children's Cold and Flu Relief" packaging.

81.   The Product did not provide the benefits, uses and qualities for Plaintiff Love, as advertised by Defendants because the Product cannot provide the advertised relief to any human being as a matter of sound scientific principles.

82.   Plaintiff Love would consider buying the Product again in future if it was effective as advertised.

83.   Plaintiff Love seeks justice for herself and for similarly-situated consumers of NatraBio® Children's Cold and Flu.

**G. NatraBio® Flu Relief Spray**



84.   Plaintiff Love purchased the NatraBio® "Flu Relief" Spray on multiple occasions from a Wal-Mart, Sam's, and various health food stores in or near Middleburg, Florida beginning on or around 2012. Ms. Love paid approximately $7.00 for each purchase of the product.

85.   Defendants falsely advertise and market the NatraBio® "Flu Relief" Spray Product by putting false and misleading claims on the label, stating or

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

suggesting that the Product provides "Fast Flu Symptom Relief" and "Relives & Reduces symptoms of: Body Aches, Congestion, Fever, Headaches, [and] Sore Throat." Defendants further claim that the NatraBio® "Flu Relief" Product is "non addicting."

86.   On the Flu Relief Product's label, Defendants additionally make the following misleading claims about the ingredients in the Product:

- "Influenzinum 12x, 30x"………………….. "relieves flu symptoms"
- "Adrenalinum 6x"…………………………. "decongestant"
- "Aconitum napellus 6x"…………………… "relieves flu symptoms"
- "Baptisia tinctoria"……..……………….. "relieves flu symptoms"
- "Eupatorium perfoliatum 6x"……………… "relieves flu symptoms"
- "Euphrasia officinalis 6x"……………………"relieves sinus symptoms"
- "Euphorbium officinarum 6x"……………….."decongestant"
- "Gelsemium sempervirens 6x"……………… "relieves body aches"
- "Sticta pulmonaria 6x"……………………….. "decongestant"
- "Rhus toxicodendron 12x"…………………… "relieves body aches"

87.   Plaintiff Love read and relied on each of the quoted statements above in paragraphs 81 through 82 that are found on the NatraBio® "Flu Relief" packaging.

88.   The Product did not provide the benefits, uses and qualities for Plaintiff Love, as advertised by Defendants because the Product cannot provide the advertised relief to any human being as a matter of sound scientific principles.

89.   Plaintiff Love would consider buying the Product again in future if it was effective as advertised.

90.   Plaintiff Love seeks justice for herself and for similarly-situated consumers of NatraBio® Flu Relief.

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

## ARTIFICIAL INGREDIENTS IN THE PRODUCTS

91.   The NatraBio® Smoking Withdrawal, Leg Cramps, Restless Legs, Cold and Sinus Nasal Spray, and Allergy and Sinus each state on the label in a uniform manner that the products are "Natural Homeopathic Medicine" made from "all natural" ingredients and the Products are "innovative natural health product[s] formulated and manufactured to pharmaceutical standards."

92.   Plaintiff and the class reasonably believed that the NatraBio® Products contained only natural ingredients.

93.   However, the NatraBio® Smoking Withdrawal, Leg Cramps, Restless Legs, Cold and Sinus Nasal Spray, and Allergy and Sinus Products each contain one or more artificial and/or synthetic ingredient.

94.   The NatraBio® Smoking Withdrawal, Leg Cramps, Restless Legs, and Allergy and Sinus Products each contain magnesium sterate as an ingredient. Magnesium sterate is an artificial and/or synthetic ingredient that does not occur naturally. Magnesium sterate "is produced as a white precipitate by the addition of an aqueous solution of magnesium chloride to an aqueous solution of sodium sterate derived from stearic acid." *See* 21 C.F.R. 184.1440.

95.   The NatraBio® Cold and Sinus Nasal Spray Product contains "benzylkonium chloride" as an ingredient. Benzalkonium chloride is an artificial and/or synthetic ingredient that does not occur naturally. Bezalkonium chloride is "a widely used synthetic antimicrobial agent used in cleaning and disinfection."[21] The ingredient is known to cause "severe skin, eye, and respiratory irritation."[22]

---

[21] See Takeoka et al., *Identification of benzalkonium chloride in commercial grapefruit seed extracts*, J. Agric. Food Chem. (Sept. 21, 2005).
[22] http://www.ewg.org/skindeep/ingredient/700674/BENZALKONIUM_CHLORIDE/

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

## RELIANCE AND INJURY

96.    All of Defendants' false and/or misleading claims challenged herein relate to matters that are material and important to a consumer's purchasing decision, as they concern the effectiveness of the NatraBio® Products, the qualities and/or composition of the Products and the reason for which they are sold.

97.    Defendants' uniform claims in its marketing and promotional materials are intended to, and did, induce Plaintiffs and members of the Classes defined herein to rely upon those representations that Defendants' Products were effective and scientifically tested and/or proven to alleviate the advertised symptoms.    These representations were a substantial factor in causing Plaintiffs and members of the Class to purchase Defendants' Products.

98.    At the time members of the Classes purchased the Products, they were unaware of the fact that the Products were not proven effective for their intended use, nor is it generally recognized among qualified experts as effective, nor that the ingredients in the products are so hyper-diluted that they cannot possibly be effective at curing any ailment in any human being.

99.    If members of the Classes had been aware of the true facts concerning the efficacy of the NatraBio® Products, they would not have purchased the Products.

100.  Plaintiffs and members of the Classes have been injured in fact and have suffered out of pocket losses.  Plaintiffs and members of the Classes therefore seek a full refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

## EXCEPTIONS TO THE STATUTE OF LIMITATIONS

101.  **Delayed discovery.** Plaintiffs are laypersons, lacked the knowledge and experience to understand how the Products' labels were deceptive or false, and information regarding the false or deceptive advertising was solely within Defendants' possession and control. Thus, the delayed discovery exception postpones accrual of the limitations period for all members of the putative classes.

102. **Fraudulent concealment.**  Additionally, or in the alternative, Defendants were both constructively and actually aware that the Products were ineffective for their advertised use. Nevertheless, Defendants continued to sell the NatraBio® Products commencing in at least 2007. Therefore, at all relevant times Defendants had a duty to inform consumers that the Products were not effective at providing relief for the advertised symptoms, but Defendants knowingly concealed that fact from members of the putative classes herein. Accordingly, the fraudulent concealment exception tolls the statute of limitations on all claims herein.

103. **Continuing violation.** Additionally, or in the alternative, because Defendants' misrepresentations and deception continues up to the present, the continuing violation exception tolls all applicable statues of limitations for all members of the putative classes until Defendants' unlawful advertising and labeling is corrected.

## CLASS ACTION ALLEGATIONS

104. Pursuant to Rules 23(a), (b)(3) and/or (b)(2) of the Federal Rules of Civil Procedure, all Plaintiffs bring this action on behalf of themselves and a consumer class initially defined below.

**The Nationwide Class**

> All purchasers of NatraBio® homeopathic Products in the United States labeled Smoking Withdrawal, Leg Cramps, Restless Legs, Cold and Sinus Nasal Spray, Allergy and Sinus, Children's Cold and Flu, and Flu Relief Spray for personal or household use and not for resale, during the applicable statute of limitations period. Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the

judicial officers, their immediate family members and court staff assigned to this case.

105.  Pursuant to Rules 23(a), (b)(3) and/or (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs Hammock and Bentley bring this action on behalf of themselves and a consumer class initially defined below.

**The California Class**

All purchasers of NatraBio® homeopathic Products in California— and states with laws similar to the California laws alleged to have been violated herein— labeled Smoking Withdrawal, Leg Cramps, and Restless Legs for personal or household use and not for resale, during the applicable statute of limitations period.  Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

106.  Pursuant to Rules 23(a), (b)(3) and/or (b)(2) of the Federal Rules of Civil Procedure, Plaintiff Love brings this action on behalf of herself and a consumer class initially defined below.

**The Florida Class**

All purchasers of NatraBio® homeopathic Products in Florida— and states with laws similar to the Florida laws alleged to have been violated herein— labeled Cold and Sinus Nasal Spray, Allergy and Sinus, Children's Cold and Flu, and Flu Relief Spray for personal or household use and not for resale, during the applicable statute of limitations period. Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' employees, officers, directors, legal

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

107.  The proposed Classes are so numerous that individual joinder of all the members is impracticable.  Due to the nature of the trade and commerce involved, however, Plaintiffs believe the total number of Class members is at least in the hundreds of thousands and members of the Classes are numerous.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

108.  Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief and damages as to the Products appropriate with respect to the Classes as a whole.  In particular, Defendants have failed to disclose the true nature of the Products being marketed as described herein.

109.  There is a well-defined community of interest in the questions of law and fact involved, affecting the Plaintiffs and the Classes and these common questions of fact and law include, but are not limited to, the following:

a.  Whether the claims discussed above are true, misleading, or reasonably likely to deceive;

b.  Whether Defendants' alleged conduct violates public policy;

c.  Whether the alleged conduct constitutes violations of the laws asserted herein;

d.  Whether Defendants engaged in false or misleading advertising;

e.  Whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss;

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

f.  Whether Plaintiffs and Class members are entitled to an award of punitive damages; and;

g.  Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

110.  Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs and all members of the Classes have been similarly affected by Defendants' common course of conduct since they all relied on Defendants' representations concerning the homeopathic Products and purchased the Products based on those representations.

111.  Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation in general and scientific claims, including for homeopathic drugs, in particular. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

112.  Plaintiffs and the members of the Classes suffered, and will continue to suffer harm as a result of the Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impracticable. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial

system and protects the rights of the class members.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

113.  Adjudication of individual Class members' claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

**A. <u>THE FRAUD CLAIMS</u>**

**<u>COUNT I</u>**

**INTENTIONAL MISREPRESENTATION**

**(By the Nationwide Class, the California Class, and the Florida Class)**

114.  Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

115.  Plaintiffs bring this first cause of action individually and on behalf of the members of the Nationwide Class against Defendants.  Alternatively, Plaintiffs Hammock and Bentley bring this first cause of action individually and on behalf of the California Class and Plaintiff Love brings this first cause of action individually and on behalf of the Florida Class.

116.  "[T]he fundamental elements of fraud are substantially similar from state to state.  Virtually every state requires that there be a misrepresentation made by the defendant, that the defendant had knowledge that it was false, that the defendant intended to induce the reliance of the plaintiff, the plaintiff relied on the statement, and the plaintiff was injured as a result." *Spencer v. Hartford Financial Services Group, Inc.*, 256 F.R.D. 284, 301 (D. Conn. 2009).

117.  The elements for a claim of intentional misrepresentation in California are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4)

justifiable reliance; and (5) resulting damage." *Cortina v. Goya Foods, Inc.*, ---F.Supp.3d---, 2015 WL 1411336, at *14 (S.D. Cal. Mar. 19, 2015).

118. Similarly, the elements of fraud under Florida law are: "(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation." *Hepp v. Paul Revere Life Ins. Co.*, ---F.Supp.3d---, 2015 WL 4623733, at *17 (M.D. Fla. July 31, 2015).

**\*\*False Statements of Material Facts\*\***

119. Defendants represented to Plaintiffs and the class members that the NatraBio® Products are effective at providing the advertised symptom relief. However, the NatraBio® products are not effective at providing the advertised symptom relief because the ingredients in the NatraBio® products are so highly diluted that they cannot possibly provide any symptom relieving effects on any person as a matter of established scientific principles.

120. Defendants represented to Plaintiffs and the class members that the NatraBio® Products contain "all natural" ingredients when the products actually contain one or more artificial or synthetic ingredients.

**\*\*Fraudulent Concealment\*\***

121. Defendants represented to Plaintiffs and the class members that the NatraBio® Products are effective at providing the advertised symptom relief. However, Defendants failed to disclose and actively concealed from Plaintiffs and the class members the truth about the NatraBio® because the products cannot possibly provide the advertised symptom relief.

**\*\*Knowledge of Falsities\*\***

122. Defendants, at all times mentioned herein, had knowledge that that their representations concerning the NatraBio® Products are false and misleading because the Products are ineffective at providing the advertised symptom relief. Defendants, at all times mentioned herein, had knowledge that the homeopathic method used to

manufacture the NatraBio® Products makes the ingredients in the products so diluted that they cannot possibly provide the advertised symptom relief for any person.

123. In Defendants' SEC Form 10-k, they admit that the homeopathic properties of the NatraBio® Products prevent the Products from having the same efficacy as conventional medicine. Defendants are also aware that there are no reliable scientific studies showing that the NatraBio® Products, or homeopathy in general, can provide the advertised symptom relief. However, Defendants continue to sell the products next to conventional OTC medicines in an effort to intentionally misrepresent that the Products are as effective as conventional medicine.

**Intent to Defraud**

124. Defendants made the misrepresentations alleged herein with the intention of inducing and persuading Plaintiffs and the class to purchase the NatraBio® Products because the Defendants sought to reap enormous profits from the sale of the falsely labeled NatraBio® Products.

125. Defendants further withheld and omitted material information about the NatraBio® Products with the intention of inducing and persuading Plaintiffs and the class to purchase the products.

**Justifiable Reliance**

126. Plaintiffs and the class, by purchasing the NatraBio® products, justifiably relied on Defendants' false and misleading statements and misrepresentations, and on the absence of the material information that Defendants omitted. If Plaintiff's and the class would have known the truth concerning the false representations and omissions, they would not have purchased the products at all.

**Injury**

127. As a direct and proximate result of Defendants' intentional misrepresentations and deceptive omissions, Plaintiffs and the class were induced to pay for worthless products.

128.  Plaintiffs and the Class were damaged through their purchase and use of the NatraBio® Products.

129.  Plaintiffs' and the Class' reliance on Defendants' statements and representations of the nature and characteristics of the NatraBio® Products was reasonable. As a result, Defendants are guilty of malice, oppression, and fraud, and Plaintiffs and the Class are therefore entitled to recover exemplary or punitive damages. Plaintiffs are also seeking actual damages and attorneys' fees and costs as allowed by statute.

## COUNT II

## NEGLIGENT MISREPRESENTATION

### (By the Nationwide Class, the California Class, and the Florida Class)

130.  Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

131.  Plaintiffs bring this second cause of action individually and on behalf of the members of the Nationwide Class against Defendants. Alternatively, Plaintiffs Hammock and Bentley bring this first cause of action individually and on behalf of the California Class and Plaintiff Love brings this first cause of action individually and on behalf of the Florida Class.

132.  "[N]egligent misrepresentation is narrower than fraud, as it lacks the element of intent to deceive." *Cortina*, 2015 WL 1411336, at *14. "Therefore, where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit." *Id.* (citing *Intieri v. Superior Court*, 117 Cal.App.4th 72, 86 (2004).

133. In marketing, advertising and promoting the NatraBio® Products, Defendants carelessly and negligently made representations regarding the products that Defendants knew or should reasonably have known or reasonably foreseen misrepresented material facts and omitted to state material facts.

134. As described herein, all reliable and credible scientific evidence demonstrates that the NatraBio® Products cannot be effective at providing the advertised symptom relief because the homeopathically prepared ingredients in the products are so hyper-dilluted that they cannot possibly have any effect on any human being.

135. Defendants acted negligently and/or recklessly by representing to consumers that the NatraBio® Products can provide the advertised symptom relief when all reliable scientific evidence shows that the Products are ineffective.

136. Defendants have a pecuniary interest in the marketing, advertising and promotion of the NatraBio® Products and in making the careless, unreasonable and negligent misrepresentations and omissions alleged herein, including to Plaintiffs and members of the Class.

137. In their marketing, advertising and promoting of the NatraBio® Products and in making the careless, unreasonable and negligent misrepresentations and omissions alleged herein, including the representations made to Plaintiffs and the members of the Class, Defendants were in a superior position than Plaintiffs and the members of the Class to know the material facts.

138. In their marketing, advertising and promoting of the NatraBio® Products and in making the careless, unreasonable and negligent misrepresentations and omissions alleged herein, including the representations made to Plaintiffs and the members of the Class, Defendants should have reasonably foreseen that Plaintiffs and members of the Class were likely to rely upon the misrepresentations.

139. Defendants' careless, unreasonable and negligent misrepresentations and omissions, as set forth in this complaint, are material in that they relate to matters to which reasonable persons, including Plaintiffs and the members of the Class, would attach importance in their purchasing decisions or conduct regarding the purchase of NatraBio® Products.

140. Under the circumstances, Defendants had a duty to disclose material, truthful information that they omitted in their careless, unreasonable and negligent misrepresentations and omissions, as set forth in this complaint.

141. As alleged in this complaint, Plaintiffs and the members of the Class uniformly relied on Defendants' careless, unreasonable and negligent misrepresentations and omissions, and under the circumstances described above such reliance was reasonable and justifiable.

142. As a result of Defendants' careless, unreasonable and negligent statements and omissions as described herein, Plaintiffs and the members of the Class have been injured and have suffered loss of money and property, and they are entitled to recover actual damages from Defendants. In addition, Plaintiffs and the class members are seeking attorneys' fees and costs as allowed by statute.

**B. BREACH OF WARRANTY CLAIMS**

**COUNT III**

**VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**

**15 U.S.C. §§ 2301, *et seq.***

**(By the Nationwide Class, the California Class, and the Florida Class)**

143. Plaintiffs and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

144. Plaintiffs bring this third cause of action individually and on behalf of the members of the Nationwide Class against Defendants. Alternatively, Plaintiffs Hammock and Bentley bring this third cause of action individually and on behalf of the California Class and Plaintiff Love brings this first cause of action individually and on behalf of the Florida Class.

145. The NatraBio® Products are consumer products as defined in 15 U.S.C. § 2301(1).

146. The NatraBio® Products sell at retail for more than five dollars.

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

147.  Each Plaintiff purchased the Products on multiple occasions and each paid twenty-five dollars or more for their total purchases.

148.  Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301 (4) and (5).

149.  In connection with the sale of the NatraBio® Products, Defendants issued written warranties as defined in 15 U.S.C. § 2301 (6), which warranted that the Products are effective at providing symptom relief.

150.  In connection with the sale of the NatraBio® Products, Defendants impliedly warranted as defined in 15 U.S.C. §2301(7), that the products were of merchantable quality, such that the products were of the same average grade, quality, and value as similar goods sold under similar circumstances.

151.  Defendants breached these warranties because the NatraBio® Products are not effective for their intended use because the products contain hyper-diluted ingredients that are scientifically incapable of curing any ailment in any human being.

152.  By reason of Defendants' breach of the express written warranties, Defendants violated the statutory rights owed to Plaintiffs and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiffs and Class members.

153.  Plaintiffs and the Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the NatraBio® products if the true facts had been known.

154. Prior to filing this action, Plaintiffs, by and through their counsel, provided Defendants with written notice of their claims pursuant to 15 U.S.C. § 2310(e) and also notified Defendants that they are acting on behalf of a Class defined as all persons in the United States who purchased the NatraBio® Products. *See Ex.* 1.

## COUNT IV

### BREACH OF EXPRESS WARRANTY

### (CAL. COM. CODE § 2313)

### (By the California Class)

155. Plaintiffs and the Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

156. Plaintiffs bring this fourth cause of action individually and on behalf of the members of the California Class against Defendants for violation of California Commercial Code § 2313 and similar laws in other states.

157. Defendants, as manufactures, marketers, distributors, or sellers, expressly warranted that the NatraBio® Products are effective at alleviating the advertised symptoms. Specifically, Defendants made the following unequivocal express warranties in the quoted language below with respect to each of the following products:

**NatraBio® Smoking Withdrawal**

- "Smoking Withdrawal"
- "natural relief for the symptoms of: Tobacco & Cigarette Cravings, Nervous Tension, Irritability"
- "helps detoxify"
- "advanced formulation"
- "non-habit forming"
- "fast, effective symptom relief"
- "Natural Homeopathic Medicine"
- "all natural ingredients"
- "innovative natural health product formulated and manufactured to pharmaceutical standards"
- "Abies nigra 10x"……………………. "respiratory symptoms"
- "Lobelia inflate 10x"………………… "reduces ill effects of nicotine"

38

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

1
- "Nicovap 10x, 14x, 24x, 30x"………."tobacco product detoxification"

2
- "Nux vomica 10x"………………….."reduces tobacco cravings"

3
- "Ignatia amara 14x"…………………."reduces nervous tension"

4
**NatraBio® Leg Cramps**

5
- "Leg Cramps"

6
- "natural relief for the symptoms of: Leg Cramps, Muscle Pain & Spasms,

7
  Cramps in the Calves and Feet, [and] Night Cramps and Pain."

8
- "advanced formulation"

9
- "non-habit forming"

10
- "fast, effective symptom relief"

11
- "Natural Homeopathic Medicine"

12
- "all natural ingredients"

13
- "innovative natural health product formulated and manufactured to

14
  pharmaceutical standards"

15
- "Chininum Sulphuricum 4x……………."neuralgia, tearing leg pains."

16
- "Colocynthis 4x"……………………… "contaction of muscles, leg cramps"

17
- "Gnaphalium polycephalum 4x"……… "frequent cramps in legs and feet"

18
- "Calcarea Carbonica 6x, 12x, 30x…… "cramps in calves at night"

19
- "Lycopodium clavatum 6x"…………… "cramps in calves, sciatica"

20
- "Magnesia Phosphorica 6x"…………… "severe cramps in calves"

21
- "Rhus toxicodendron 6x, 12x, 30x"…… "cramps in calves, tearing pains"

22
- "Cuprum Metallicum 12x"……………… "cramps in legs and feet"

23
**NatraBio® Restless Legs**

24
- "Restless Legs"

25
- "natural relief for the symptoms of: Restlessness, Jerking & Twitching,

26
  Constant Urge to Move, [and] Tingling"

27
- "Restless Legs"

28
- "Advanced formulation"

---

39

*Hammock et al. v. NutraMarks, Inc. et al.*

CLASS ACTION COMPLAINT

- "Non-habit forming"
- "Fast, effective symptom relief"
- "Natural Homeopathic Medicine"
- "All natural ingredients"
- "Innovative natural health product formulated and manufactured to pharmaceutical standards"
- "Arsenicum Album 12x"…………..."desire to move feet constantly"
- "Chamomile 6x"………………..."urge to get up and walk around"
- "Causticum 12x"………………..."restless legs at night"
- "Lycopodium clavatum 6x"………."weakness, numbness, leg cramps"
- "Palladium 12x"…………………    "heavy limbs, darting pains, restlessness"
- "Platina 12x"………………………"restlessness, tingling legs"
- "Zincum Metalicum 12x"………….."twitching and jerking of legs"

**NatraBio® Cold and Sinus Nasal Spray**

- "Cold and Sinus Nasal Spray"
- "Nasal Congestion, Sinus Pressure, Headache, Sneezing, [and] Runny Nose."
- "Continuous use formula"
- "Natural Homeopathic Medicine"
- "Formulated and manufactured utilizing natural ingredients in accordance with strict FDA pharmaceutical standards to ensure safety and purity"
- "Aconitum napellus 6x"………….. "sudden onset of cold symptoms"
- "Adrenalinum 6x"………………… "decongestant"
- "Allium cepa 6x"………………….. "runny nose, sinus congestion"
- "Echinacea angustifolia 6x"………. "cold and sinus symptoms"
- "Euphorbium officinarum 6x"…… "sinus congestion and pain"
- "Hydrastis canadensis 6x"………… "sinus congestion, runny nose"
- "Kali bichromicum"………………..."cold symptoms, congestion"

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

- "Phytolacca decondra 6x"…………..…. "cold, cough, sore throat"
- "Sticta pulmaria 6x"……………..…"cold, cough, headache"

**NatraBio® Allergy and Sinus**

- "Allergy and Sinus"
- "Natural relief for the symptoms of: Sinus Pressure & Pain, Runny Nose, Water Eyes, Nasal Congestion, [and] Hay Fever Allergies"
- "Advanced formulation"
- "Non-habit forming"
- "Fast, effective symptom relief."
- "Natural Homeopathic Medicine"
- "All natural ingredients"
- "Innovative natural health product formulated and manufactured to pharmaceutical standards"
- "Chamomilla 1x"………………….   "allergies, headache, runny nose, cough"
- "Echinacea angustifolia"………….. "allergic reactions, allergies"
- "Allium cepa 6x"……………… " sneezing, runny nose, hay fever, water eyes"
- "Ambrosia artemisiaefolia"…….…. "hay fever, stuffy head and nose"
- "Euphorbium officinarum 6x"………"sinus congestion and pain"
- "Gelsemium sempervirens 6x"…….. " headache, sneezing, runny nose"
- "Sanguinaria canadensis 6x"…… "hay fever, runny nose, burning eyes, cough"
- "Sticta pumaria 6x"…………. "headache, stuffiness, hay fever"
- "Kali lodatum 9x"…… "sinus headache, runny nose, sneezing, and stuffiness"

**NatraBio® Children's Cold and Flu Relief**

- "Children's Cold and Flu"
- "Relief for: Congestion, Sore Throat, Nausea and Vomiting, Sneezing and Runny Nose, [and] Headache and Body Aches"
- "Natural Homeopathic Medicine"

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

- "Quality parents can trust"

**<u>NatraBio® Flu Relief</u>**

- "Flu Relief"
- "Fast Flu Symptom Relief"
- "Relives & Reduces symptoms of: Body Aches, Congestion, Fever, Headaches, [and] Sore Throat"
- "non addicting"
- "Influenzinum 12x, 30x"…………………….. "relieves flu symptoms"
- "Adrenalinum 6x"…………………………. "decongestant"
- "Aconitum napellus 6x"…………………… "relieves flu symptoms"
- "Baptisia tinctoria"…….………………….. "relieves flu symptoms"
- "Eupatorium perfoliatum 6x"……………… "relieves flu symptoms"
- "Euphrasia officinalis 6x"……………………"relieves sinus symptoms"
- "Euphorbium officinarum 6x"……………….."decongestant"
- "Gelsemium sempervirens 6x"……………   "relieves body aches"
- "Sticta pulmonaria 6x"……………………….. "decongestant"
- "Rhus toxicodendron 12x"…………………… "relieves body aches"

158.  Defendants breached each of the warranties in the above-quoted language because the NatraBio® Products are not effective for their intended use and the Products have never been proven effective by competent and reliable scientific evidence to alleviate any symptom in any human being.  Additionally, the Products contain one or more artificial and/or synthetic ingredients despite the fact that Defendants represent the Products as being "all natural."

159. Plaintiffs and the Class members were exposed to the above-quoted express written warranties, relied on the express written warranties when purchasing the products, and the above-quoted written warranties were part of the "basis of the bargain" in the sales transactions.

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

160. Plaintiffs and the Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the NatraBio® products if the true facts had been known.

161. Defendants breached their express warranty by selling products that are not effective for their intended use because homeopathic products have never been proven effective by competent and reliable scientific evidence.

162. Plaintiffs and the Class Members, as consumers of the NatraBio® Products, are third-party beneficiaries of agreements between the Defendants and retailers who sell the NatraBio® Products.

163. Prior to filing this action, Plaintiffs, by and through their counsel, provided Defendants with written notice of their claims and also notified Defendants that they are acting on behalf of a Class defined as all persons in the United States who purchased the NatraBio® Products. *See Ex.* 1.

164. Plaintiffs, on behalf of themselves and the class, seek actual damages and attorneys' fees and costs as allowed by statute for Defendants' breach of warranty.

## COUNT V

## VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES

### (CAL. CIV. CODE §§ 1791, *et seq.*)

165. Plaintiffs and the Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

166. Plaintiffs bring this fifth cause of action individually and on behalf of the members of the California Class against Defendants for violation of California Civil Code §§ 1791, *et seq.*

167. Plaintiffs and the other Class members who purchased the NatraBio® Products in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

168. The NatraBio® Products are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

169. Defendants are "manufacturers" of the NatraBio® Products within the meaning of Cal. Civ. Code § 1791(j).

170. Plaintiffs and the other Class members who purchased the NatraBio® Products in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

171. Defendants made express warranties to Plaintiffs and the other Class members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described in Count IV and incorporated by reference herein.

172. Defendants breached each of the warranties described in Count IV and incorporated by reference herein because the NatraBio® Products are not effective for their intended use and the Products have never been proven effective by competent and reliable scientific evidence to alleviate any symptom in any human being. Additionally, the Products contain one or more artificial and/or synthetic ingredients despite the fact that Defendants represent the Products as being "all natural."

173. Plaintiffs and the Class members were exposed to the above-quoted express written warranties, relied on the express written warranties when purchasing the products, and the above-quoted written warranties were part of the "basis of the bargain" in the sales transactions.

174. Plaintiffs and the Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the NatraBio® products if the true facts had been known.

175. Defendants breached their express warranty by selling products that are not effective for their intended use because homeopathic products have never been proven effective by competent and reliable scientific evidence.

176. Prior to filing this action, Plaintiffs, by and through their counsel, provided Defendants with written notice of their claims and also notified Defendants that they are acting on behalf of a Class defined as all persons in the United States who purchased the NatraBio® Products. *See Ex.* 1.

177.  Plaintiffs, on behalf of themselves and the class, seek actual damages and attorneys' fees and costs as allowed by statute for Defendants' breach of warranty.

## COUNT VI

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## (CAL. COM. CODE § 2314)

### (By the California Class)

178.  Plaintiffs and the Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

179.  Plaintiffs bring this sixth cause of action individually and on behalf of the members of the California Class against Defendants for violations of California Commercial Code § 2314 and similar laws in other states.

180. Defendants were at all relevant times merchants with respect to the NatraBio® products under Cal. Com. Code § 2104.

181.  A warranty that the NatraBio® Products were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

182.  Defendants, as the designers, manufacturers, marketers, distributors, and sellers impliedly warranted that the NatraBio® products were fit for their intended purpose in that the Products would be effective at alleviating the advertised symptoms. Defendants did so with the intent to induce Plaintiffs and members of the Class to purchase the Products.

183.  Defendants breached their implied warranties in the contract for the sale of the NatraBio® products because the Products are ineffective at providing relief from any symptom in any human being and are therefore the Products are not fit for their ordinary purpose.

184.  Additionally, the Products contain one or more artificial and/or synthetic ingredients despite the fact that Defendants represent the Products as being "all natural."

185. In reliance upon Defendants' skill and judgment and the implied warranties discussed above, Plaintiffs and the Class members purchased the NatraBio® Products to help alleviate the advertised symptoms.

186. Plaintiffs and the Class Members, as consumers of the NatraBio® Products, are third-party beneficiaries of agreements between the Defendants and retailers who sell the NatraBio® Products.

187. The NatraBio® products were not altered by Plaintiffs or the Class Members.

188. Prior to filing this action, Plaintiffs, by and through their counsel, provided Defendants with written notice of their claims and also notified Defendants that they are acting on behalf of a Class defined as all persons in the United States who purchased the NatraBio® Products. *See Ex.* 1.

189. Plaintiffs, on behalf of themselves and the class, seek actual damages, equitable relief, and attorneys' fees and costs as allowed by statute for Defendants' breach of warranty.

## COUNT VII
## VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. CIV. CODE §§ 1791.1 & 1792)
### (By the California Class)

190. Plaintiffs and the Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

191. Plaintiffs bring this seventh cause of action individually and on behalf of the members of the California Class against Defendants.

192. Plaintiffs and the other Class members who purchased the NatraBio® Products in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

193. The NatraBio® Products are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

194. Defendants are "manufacturers" of the NatraBio® Products within the meaning of Cal. Civ. Code § 1791(j).

195. Plaintiffs and the other Class members who purchased the NatraBio® Products in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

196. Defendants impliedly warranted to Plaintiffs and the other Class members that the NatraBio® Products were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, the Products do not have the quality that a buyer would reasonably expect.

197. 402. Cal. Civ. Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the container or label.

198. The Products would not pass without objection because they are ineffective at providing the advertised symptom relief and therefore are worthless products.

199. The Products are not fit for the ordinary purpose in which OTC drug products are used because the Products provide no symptom relief whatsoever.

200. The Products are not adequately labeled because the labeling fails to disclose the true nature of the homeopathic preparation of the products that renders the products to be wholly ineffective for their advertised use.

201. The NatraBio® Products also fail to conform to the promises or affirmations of fact made on the container or label because they are ineffective at providing relief from any symptom in any human being. Additionally, the Products

contain one or more artificial and/or synthetic ingredients despite the fact that Defendants represent the Products as being "all natural."

202. In reliance upon Defendants' skill and judgment and the implied warranties discussed above, Plaintiffs and the Class members purchased the NatraBio® Products to help alleviate the advertised symptoms.

203. Plaintiffs and the Class Members, as consumers of the NatraBio® Products, are third-party beneficiaries of agreements between the Defendants and retailers who sell the NatraBio® Products.

204. The NatraBio® products were not altered by Plaintiffs or the Class Members.

205. Prior to filing this action, Plaintiffs, by and through their counsel, provided Defendants with written notice of their claims and also notified Defendants that they are acting on behalf of a Class defined as all persons in the United States who purchased the NatraBio® Products. *See Ex.* 1.

206. Plaintiffs, on behalf of themselves and the class, seek actual damages, equitable relief, and attorneys' fees and costs as allowed by statute for Defendants' breach of warranty.

**COUNT VIII**

**BREACH OF EXPRESS WARRANTY**

**(FLA. STAT. § 672.313)**

**(By the Florida Class)**

207. Plaintiffs and the Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

208. Plaintiff Love brings this eighth cause of action individually and on behalf of the members of the Florida Class against Defendants for violation of Florida Statute Annotated § 672.313 and similar laws in other states.

209. Defendants breached each of the express warranties described in Count IV and incorporated by reference herein because the NatraBio® Products are not

effective for their intended use and the Products have never been proven effective by competent and reliable scientific evidence to alleviate any symptom in any human being.  Additionally, the Products contain one or more artificial and/or synthetic ingredients despite the fact that Defendants represent the Products as being "all natural."

210.  Defendants express warranties regarding the NatraBio® Products formed the basis of the bargain that was reached when Plaintiff Love and the other Class members purchased the products.

211.  Plaintiffs and the Class members were exposed to the above-quoted express written warranties, relied on the express written warranties when purchasing the products, and the above-quoted written warranties were part of the "basis of the bargain" in the sales transactions.

212.  Plaintiffs and the Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the NatraBio® products if the true facts had been known.

213.  Defendants breached their express warranty by selling products that are not effective for their intended use because homeopathic products have never been proven effective by competent and reliable scientific evidence.

214.  Plaintiff, on behalf of herself and the Florida class, seek all remedies as allowed by law including but not limited to actual damages, attorneys' fees, and costs as allowed by statute for Defendants' breach of warranty.

215.  In addition, at the time Defendants warranted and sold the NatraBio® Products it knew that the Products did not conform to the warranties and were inherently ineffective at providing the advertised symptom relief, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding the NatraBio® Products. Plaintiff and the other Class members were therefore induced to purchase the NatraBio® Products under false and/or fraudulent pretenses.

216. Plaintiff and the other Class members assert as an additional and/or alternative remedy, as set forth in Fla. Stat. § 672.608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other Class members of the purchase price of all NatraBio® Products purchased and for such other incidental and consequential damages as allowed under Fla. Stat. §§ 672.711 and 672.608.

217. Prior to filing this action, Plaintiffs, by and through their counsel, provided Defendants with written notice of their claims and also notified Defendants that they are acting on behalf of a Class defined as all persons in the United States who purchased the NatraBio® Products. *See Ex.* 1.

**COUNT IX**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(FLA. STAT. § 672.314)**

**(By the Florida Class)**

218. Plaintiffs and the Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

219. Plaintiff Love bring this ninth cause of action individually and on behalf of the members of the Florida Class against Defendants for violations of Florida Statute Annotated § 672.314 and similar laws in other states.

220. Defendants were at all relevant times merchants with respect to the NatraBio® products.

221. A warranty that the NatraBio® Products were in merchantable condition was implied by law in the instant transaction.

222. Defendants, as the designers, manufacturers, marketers, distributors, and sellers impliedly warranted that the NatraBio® products were fit for their intended purpose and were not fit for the ordinary purpose in which they are used in that the Products would be effective at alleviating the advertised symptoms. Defendants did so with the intent to induce Plaintiffs and members of the Class to purchase the Products.

223.  Defendants breached their implied warranties in the contract for the sale of the NatraBio® products because the Products are ineffective at providing relief from any symptom in any human being and are therefore the Products are not fit for their ordinary purpose.

224.  Additionally, the Products contain one or more artificial and/or synthetic ingredients despite the fact that Defendants represent the Products as being "all natural."

225.  In reliance upon Defendants' skill and judgment and the implied warranties discussed above, Plaintiffs and the Class members purchased the NatraBio® Products to help alleviate the advertised symptoms.

226.  Plaintiffs and the Class Members, as consumers of the NatraBio® Products, are third-party beneficiaries of agreements between the Defendants and retailers who sell the NatraBio® Products.

227.  The NatraBio® products were not altered by Plaintiffs or the Class Members.

228.  Prior to filing this action, Plaintiffs, by and through their counsel, provided Defendants with written notice of their claims and also notified Defendants that they are acting on behalf of a Class defined as all persons in the United States who purchased the NatraBio® Products. *See Ex.* 1.

229.  Plaintiffs, on behalf of themselves and the class, seek all available remedies by law including but not limited to actual damages, equitable relief, and attorneys' fees and costs as allowed by statute for Defendants' breach of warranty.

## COUNT X

## BREACH OF CONTRACT/ COMMON LAW WARRANTY

### (By the Nationwide Class, the California Class, and the Florida Class)

230.  Plaintiffs and the Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

231.  Plaintiffs bring this tenth cause of action individually and on behalf of the members of all Classes against Defendants. Alternatively, Plaintiffs Bentley and Hammock bring this tenth cause of action individually and on behalf of the California class and Plaintiff Love brings this tenth cause of action individually and on behalf of the Florida class.

232.  To the extent Defendants' representations are deemed not to be warranties under California's Commercial Code or Florida's Commercial Code, Plaintiffs, individually and on behalf of the other Class members, plead in the alternative under common law warranty and contract law.

233.  Defendants breached each of the warranties detailed in Count IV and incorporated by reference herein because the NatraBio® Products are not effective for their intended use and the Products have never been proven effective by competent and reliable scientific evidence to alleviate any symptom in any human being. Additionally, the Products contain one or more artificial and/or synthetic ingredients despite the fact that Defendants represent the Products as being "all natural."

234.  Plaintiffs and the Class members were exposed to the above-quoted express written warranties, relied on the express written warranties when purchasing the products, and the above-quoted written warranties were part of the "basis of the bargain" in the sales transactions.

235.  Plaintiffs and the Class Members, as consumers of the NatraBio® Products, are third-party beneficiaries of agreements between the Defendants and retailers who sell the NatraBio® Products.

236.  Plaintiffs and the Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the NatraBio® products if the true facts had been known.

237.  Defendants breached their express warranty by selling products that are not effective for their intended use because homeopathic products have never been proven effective by competent and reliable scientific evidence.

238. Prior to filing this action, Plaintiffs, by and through their counsel, provided Defendants with written notice of their claims and also notified Defendants that they are acting on behalf of a Class defined as all persons in the United States who purchased the NatraBio® Products. *See Ex.* 1.

239. Plaintiffs, on behalf of themselves and the class seek all available remedies allowed by law including but not limited to actual damages, recession/ restitution, and attorneys' fees and costs as allowed by statute for Defendants' breach of warranties.

## C. <u>CLAIM FOR RESTITUTION</u>

### COUNT XI

### QUASI-CONTRACT/ UNJUST ENRICHMENT

### (By the Nationwide Class, the California Class, and the Florida Class)

240. Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

241. Plaintiffs bring this eleventh cause of action individually and on behalf of the members of the Nationwide Class against Defendants. Alternatively, Plaintiffs Hammock and Bentley bring this eleventh cause of action individually and on behalf of the California Class and Plaintiff Love brings this eleventh cause of action individually and on behalf of the Florida Class.

242. Plaintiffs and the Class members conferred a benefit on Defendants by purchasing the NatraBio® Products.

243. Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of the NatraBio® Products, which retention under these circumstances is unjust and inequitable because Defendants misrepresented the facts concerning the efficacy of the Products and caused Plaintiffs and the Class to lose money as a result thereof.

244. Plaintiffs and the Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the NatraBio®

Products if the true facts had been known. Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and Class members for their unjust enrichment, as ordered by the Court.

**D. VIOLATIONS OF CONSUMER PROTECTION STATUTES**

**COUNT XII**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**

**(CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ*.)**

**(By the California Class)**

245. Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

246. Plaintiffs Hammock and Bentley bring this twelfth cause of action individually and on behalf of the members of the California Class against Defendants.

247. California's Unfair Competition Law, Business and Professions Code §17200 (the "UCL") prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Defendants have engaged in unfair, deceptive, untrue and misleading advertising, and continue to engage in such business conduct, in violation of the UCL.

248. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

**\*\*Unlawful\*\***

249. Defendants have violated the UCL unlawful prong in at least the following ways:

    i. By knowingly and intentionally concealing from Plaintiffs and the other California Class members that the NatraBio® Products cannot provide the advertised symptom relief while obtaining money from Plaintiffs;

  ii. By misrepresenting the nature of the NatraBio® Products and the Products' effectiveness at providing the advertised symptom relief.

  iii. By falsely advertising the Products as being "all natural" despite the fact that the Products contain one or more artificial or synthetic ingredients.

  iv. By violating federal laws, including the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301; and

  v. By violating other California laws, including Cal. Civ. Code §§ 1709, 1710,and 1750, *et seq.*, and Cal. Comm. Code § 2313.

250. Such conduct is ongoing and continues to this date.

251. Plaintiffs and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

**\*\*Unfair\*\***

252. The UCL also prohibits any "unfair"… business act or practice."

253. Defendants' acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  In the alternative, Defendants' business conduct as described herein violates relevant laws designed to protect consumers and business from unfair competition in the marketplace.  Such conduct is ongoing and continues to date.

254. Plaintiffs also allege violations of consumer protection, unfair competition and truth in advertising laws in California and other states resulting in harm to consumers.  Plaintiffs assert violation of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of the UCL.  Such conduct is ongoing and continues to this date.

255. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

**\*\*Fraudulent\*\***

256. The UCL also prohibits any "fraudulent business act or practice."

257. Defendants' claims, nondisclosures (i.e., omissions) and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive a reasonable consumer within the meaning of the UCL. Such conduct is ongoing and continues to this date.

258. Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and the other Class members. Plaintiffs Hammock and Bentley have suffered injury in fact as a result of Defendants' unfair conduct.

259. Defendants have thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiffs Hammock, Bentley, and the Class to injunctive relief against Defendants, as set forth in the Prayer for Relief.

260. Pursuant to Business and Professions Code §17203, Plaintiffs Hammock, Bentley, and the Class seek an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to engage in a corrective advertising campaign.

261. Plaintiffs Hammock and Bentley, on behalf of the Class, also seek an order for the disgorgement and restitution of all monies from the sale of the Products they purchased, which was unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition and attorneys' fees and costs.

## COUNT XIII

## VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT

## (CAL. CIV. CODE §§ 1750, *ET SEQ.*)

### (By the California Class)

262. Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

263. Plaintiffs Hammock and Bentley bring this thirteenth cause of action individually and on behalf of the members of the California Class against Defendants.

264. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act"), and similar consumer fraud laws in other states.  Plaintiffs are consumers as defined by California Civil Code §1761(d).  The Products are goods within the meaning of the Act.

265. Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of the NatraBio® Products:

> (5)     Representing that [the Products have] … characteristics … uses [or] benefits … which it does not have … ***
>
> (7)     Representing that [the Products are] of a particular standard, quality or grade… if [they are] of another. ***
>
> (9)     Advertising a good… with intent not to sell it as advertised. ***
>
> (16)    Representing that [the Products have] been supplied in accordance with a previous representation when [it have] not.

266. Defendants violated the Act by representing false or deceptive information in the labeling of the Products as described above, when they knew, or should have known, that the representations and advertisements were false or misleading.

267. Plaintiffs and other members of the Class reasonably relied upon the Defendants' representations as to the quality and attributes of the NatraBio® Products.

268. Plaintiffs and other members of the Class were likely to be deceived by Defendants' representations about the quality and attributes of their Products, including but not limited to the purported uses, benefits and characteristics of their Products, taken as a whole, as described herein.  Plaintiffs and other Class members

would not have purchased the Products had they known the Defendants' claims were untrue, and had they known the true nature of the Products.

269. Pursuant to § 1782 *et seq*. of the Act, Plaintiffs notified Defendants in writing by certified mail of the particular violations of § 1770 of the Act as to the Products they purchased and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. *See Ex.* 1. Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the California's Consumers Legal Remedies Act since Defendants are still representing that the Products have characteristics, uses, benefits, and abilities which are false and misleading, and have injured Plaintiffs and the Class.

270. Pursuant to California Civil Code § 1780(d), Plaintiffs Hammock and Bentley have attached to this complaint their "venue affidavits." *See Ex.* 2.

271. Pursuant to California Civil Code §§ 1780(a) and 1782(d), Plaintiff Hammock, Plaintiff Bentley, and the California Class seek an order of this Court awarding Plaintiff Hammock, Plaintiff Bentley and the Class prospective and retrospective injunctive relief, restitution, disgorgement, damages, punitive damages and attorneys' fees and costs.

## COUNT XIV

## VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ*.)

272. Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

273. Plaintiffs Hammock and Bentley bring this fourteenth cause of action individually and on behalf of the members of the California Class against Defendants for Defendants' violation of California False Advertising Law and similar laws in other states.

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

274. Plaintiffs Hammock and Bentley have standing to pursue this claim as Plaintiffs have suffered injury in fact as a result of Defendants' actions as set forth herein. Specifically, prior to the filing of this action, Plaintiffs purchased the Products in reliance upon Defendant's marketing claims. Plaintiffs used the Products as directed, but the Products have not worked as advertised, nor provided any of the promised benefits.

275. Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California Business and Professions Code section 17500, *et seq.* because Defendants advertised the Products Hammock and Bentley purchased in a manner that is untrue and misleading, and that is known or reasonably should have been known to Defendants to be untrue or misleading.

276. Defendants' wrongful business practices have caused injury to Plaintiffs and the Class.

277. Pursuant to section 17535 of the California Business and Professions Code, Plaintiff s Hammock and Bentley as well as the California Class seek an order of this court enjoining Defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in the complaint.

278. Plaintiffs Hammock and Bentley also seek an order for the disgorgement and restitution of all monies from the sale of the Products which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition and attorneys' fees and costs.

**COUNT XV**

**VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

**(FLA. STAT. § 501.201 *et seq.*)**

279.   Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

280.   Plaintiff Love brings this fifteenth cause of action individually and on behalf of the members of the Florida Class against Defendants.

281.   This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA") and similar consumer fraud laws in other states.

282.   The purpose of FDUPTA is to "protect the consuming public…from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade of commerce."  Fla. Stat. Ann § 501 202(2).

283.   Plaintiff Love and the members of the Class are consumers as defined by Fla. Stat. § 501.203.   The Products are goods within the meaning of FDUPTA. Defendants are engaged in trade or commerce within the meaning of FDUPTA.

284.   Fla. Stat. § 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of any trade or commerce."

285.   Fla. Stat. § 501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."

286.   Federal decisions provide that "a deceptive practice is one that is likely to mislead consumers."  *Jovine v. Abbott Labs., Inc.,* 2011 U.S. Dist. LEXIS 39702, 2011 WL 1376029 (S.D. Fla. Apr. 12, 2011) (quoting *Davis v. Powertel,* 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2000)).  The Fourth District Court of Florida has held

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

that an unfair practice is one that "offends established public policy and one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Yachting Promotions, Inc. v. Broward Yachts, Inc.,* 792 So.2d 600, 664 (Fla. 4th DCA 2001).

287.  Defendants' unfair and deceptive practices are likely to mislead, and have misled, Plaintiff Love and Class members who purchased the Products.

288.  Further, Defendants have violated the FDUPTA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

289.  Plaintiff Love and the Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid for the Products but the Products were not as represented to them because they did not provide the advertised symptom relief.

290.  The damages suffered by Plaintiff Love and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of the Defendants, as more fully described above.

291.  Pursuant to Fla. Stat. § 501.211(1), Plaintiff Love and the Class seek a declaratory judgment and court order for restitution and disgorgement.

292.  Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff Love and the Class make claims for damages, attorneys' fees and costs. Plaintiffs also seek all other available remedies as allowed by law.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated and the general public, pray for judgment against Defendants as to each and every cause of action, including:

> A.  An order declaring this action to be a proper Class Action, appointing the Law Offices of Ronald A. Marron as Class Counsel, Plaintiffs as Class Representatives, and requiring Defendants to bear the costs of class notice;

B.   An order awarding Plaintiffs and the proposed Class members damages, and punitive damages in the amount to be determined at trial;

C.   An order awarding restitution and disgorgement of Defendants' revenues from the Products to Plaintiffs and the proposed Class members;

D.   An order awarding attorneys' fees and costs to Plaintiffs;

E.   An order awarding Plaintiffs an incentive award if appointed class representatives;

F.   An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

G.   An order compelling Defendants to engage in a corrective advertising campaign to inform the public concerning the true nature of the Products, including a recall of the falsely and deceptively labeled Products.

H.   An order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT

Dated:  September 15, 2015

/s/ Ronald A. Marron
RONALD A. MARRON

**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorney for Plaintiffs and the Proposed Class***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF EXHIBTS**

| 1 | Plaintiffs' demand letter regarding breach of warranty claims and violations of the Consumers Legal Remedies Act. |
|---|---|
| 2 | Affidavits of Venue Pursuant to  California Civil Code § 1780(d) |

*Hammock et al. v. NutraMarks, Inc. et al.*
CLASS ACTION COMPLAINT