1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   CYNTHIA HAMMOCK, et al.,            Case No.:  15cv2056 BTM (NLS)

12                            Plaintiffs,
                                         **ORDER GRANTING IN PART**
13   v.                                  **AND DENYING IN PART**
                                         **DEFENDANTS' MOTION TO**
14   NUTRAMARKS, INC., et al.,           **DISMISS**

15                           Defendants.

16

17        Plaintiffs Cynthia Hammock, Sherry Bentley, and Linda Love (collectively

18   "Plaintiffs") filed a class action complaint ("Complaint") on September 15, 2015,

19   against Defendants Nutramarks, Inc., Nutrapure, Inc., and Nutraceutical Corp.

20   (collectively "Defendants"). On October 9, 2015, Defendants filed a motion to

21   dismiss. (ECF No. 10). For the reasons discussed below, Defendants' motion is

22   **GRANTED IN PART** and **DENIED IN PART**.

23

24                          **I. BACKGROUND**

25        Defendants manufacture, advertise, and distribute homeopathic products

26   under the "NatraBio" label as part of Defendant Nutraceutical's "Nature's Cures

27   Collection." (Compl. ¶¶ 12-14.) The NatraBio products allegedly provide "fast

28   acting symptom relief and . . . a natural alternative for every medicine cabinet."

1   (Compl. ¶ 20.)

2        The Complaint concerns seven NatraBio products, labeled: Smoking

3   Withdrawal; Leg Cramps; Restless Legs; Cold and Sinus Nasal Spray; Allergy

4   and Sinus; Children's Cold and Flu; and Flu Relief Spray (collectively "Products").

5   The label on each product lists symptoms that the product allegedly relieves.

6   Plaintiffs allege that the Products have not been proven to relieve any symptoms,

7   and that the Plaintiffs would not have purchased the Products but-for the

8   representations on the labels. (Compl. ¶ 98.) Moreover, Plaintiffs allege that six

9   of the Products, which state on their labels that they are "Natural Homeopathic

10  Medicine[s]" made from "all natural" ingredients, in fact contain one or more

11  artificial or synthetic ingredients. (Compl. ¶¶ 91, 92.)

12       Plaintiffs purchased the Products from retailers after allegedly having read

13  and relied upon the representations stated on the Products' labels. (See, e.g.,

14  Compl. ¶¶ 46, 53.) The Complaint proposes three different classes: (1) a

15  "Nationwide Class" that purchased any of the seven Products in the United

16  States (Compl. ¶ 104); (2) a "California Class" that purchased either the Smoking

17  Withdrawal, Leg Cramps, or Restless Legs products (Compl. ¶ 105); and (3) a

18  "Florida Class" that purchased either the Cold and Sinus Spray, Allergy and

19  Sinus, Children's Cold and Flu, or Flu Relief Spray products (Compl. ¶ 106).

20       Plaintiff's Complaint includes fraud claims for intentional misrepresentation

21  and negligent misrepresentation, brought on behalf of all three proposed classes;

22  breach of warranty claims, brought on behalf of the California class and alleging

23  violations of California law; breach of warranty claims, brought on behalf of the

24  Florida class and alleging violations of Florida law; restitution claims, brought on

25  behalf of all three proposed classes; consumer protection claims, brought on

26  behalf of the California class and alleging violations of California law; and

27  consumer protection claims, brought by the Florida class and alleging violations

28  of Florida law. Defendants move to dismiss the entire Complaint.

**II. DISCUSSION**

1

2     A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should

3 be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or

4 sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police

5 Dept., 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss,

6 the allegations of material fact in plaintiff's complaint are taken as true and

7 construed in the light most favorable to the plaintiff. See Parks Sch. of Bus., Inc.

8 v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

9     Although detailed factual allegations are not required, factual allegations

10 "must be enough to raise a right to relief above the speculative level." Bell

11 Atlantic v. Twombly, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to prove

12 the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

13 conclusions, and a formulaic recitation of the elements of a cause of action will

14 not do." Id. "[W]here the well-pleaded facts do not permit the court to infer more

15 than the mere possibility of misconduct, the complaint has alleged - but it has not

16 show[n] that the pleader is entitled to relief." Ashcroft v. Iqbal, 565 U.S. 662, 679

17 (2009) (internal quotation marks omitted). Only a complaint that states a

18 plausible claim for relief will survive a motion to dismiss. Id.

19     In their Complaint, Plaintiffs generally allege that Defendants' products

20 mislead consumers because they are ineffective and contain artificial ingredients.

21 Defendants' move to dismiss, arguing that (A) Plaintiffs failed to adequately plead

22 their misrepresentation claims; (B) Plaintiffs lack standing to request injunctive

23 relief; (C) Defendants are not liable for punitive damages; and (D) Plaintiffs lack

24 privity to allege breach of warranty claims. Each argument is discussed in turn.

25 **A.    Misrepresentation Claims**

26     Plaintiffs state in their Complaint that, "Defendants continue to manufacture

27 and sell a variety of NatraBio homeopathic products that make false and

28 deceptive statements to alleviate certain symptoms." (See Compl. ¶ 41.)

1  Plaintiffs' misrepresentation claims rest on two theories: that the Products are

2  ineffective and that the Products are not all-natural.

3        ***1.      Effectiveness Claims***

4        First, Plaintiffs cite scientific studies that generally attack the effectiveness

5  of homeopathy. Defendants argue that these studies are insufficient to support a

6  misrepresentation claim because the studies do not have a bearing on the

7  truthfulness of the Products' specific representations. The Court disagrees.

8        To state a claim for relief under Florida and California consumer protection

9  statutes, a party "must plead facts from which [the court] might infer that the

10  representations made on the products' packaging were false, deceptive, or

11  misleading." In re GNC Corp., 789 F.3d 505, 513 n.7 (4th Cir. 2015)

12  (summarizing state consumer protection statutes, including Florida and

13  California). Here, Plaintiffs allege that homeopathic products are generally

14  ineffective because they are hyper-diluted. (See Compl. ¶¶ 29-31.) Plaintiffs cite

15  a 2009 study from the United Kingdom House of Commons in support of their

16  ineffectiveness claims. Plaintiffs specifically quote from the portion of the study

17  that states, "[w]e consider the notion that ultra-dilutions can maintain an imprint of

18  substances previously dissolved in them to be scientifically implausible." (Compl.

19  ¶ 31.)

20        Although the Complaint only concerns the effectiveness of Defendants'

21  Products, Plaintiffs are alleging that homeopathy in general is ineffective. Should

22  Plaintiffs prove this allegation later on, Defendants' Products would likewise be

23  proven to be ineffective. Therefore, viewing the factual allegations in a light most

24  favorable to the Plaintiffs, the Complaint adequately claims that Defendants'

25  Products are ineffective because they are hyper-diluted—just like the

26  homeopathic products at issue in the studies. See Allen v. Similasan Corp., No.

27  12cv0376 BTM (WMC), 2013 WL 2120825, at*5 (S.D. Cal. May 14, 2013)

28  (holding that similar allegations made against the effectiveness of homeopathic

1 products sufficiently stated a claim under California's false advertising statutes).

2 Next, Defendants argue that Plaintiffs' misrepresentation claims fail

3 because at least some experts believe homeopathy works. The Complaint

4 alleges that, "[a]n overwhelming majority of experts in the scientific community

5 agree that the homeopathic theory of dilutions is inconsistent with basic science."

6 (Compl. ¶ 30.) In response, Defendants cite a Fourth Circuit decision, In re GNC

7 Corp., 789 F.3d 505 (4th Cir. 2015), in support of the proposition that Plaintiffs

8 must allege all reasonable experts agree the representations are false. Again,

9 the Court disagrees.

10 The plaintiffs' allegations in GNC Corp. focused only on false advertising

11 claims and did not include allegations that the defendant's products were

12 deceptive or misleading. Id. at 514. The Fourth Circuit recognized the importance

13 of such a distinction, stating:

14
15
16
17
18
> Our holding today should not be interpreted as insulating manufacturers of nutritional supplements from liability for consumer fraud. A manufacturer may not hold out the opinion of a minority of scientists as if it reflected broad scientific consensus. Nevertheless, we need not decide today whether any of the representations made on the Companies' products are misleading, because Plaintiffs chose not to include such allegations . . . .

19 Id. at 516. Here, the Complaint alleges that the Products make false and

20 deceptive statements. (Compl. ¶ 41.); see also Mullins v. Premier Nutrition Corp.,

21 No. 13cv1271 RS, 2016 WL 1534784, at *16-17 (N.D. Cal. Apr. 15, 2016)

22 (declining to follow GNC Corp., noting that the Fourth Circuit addressed only the

23 pleading requirements for false advertising claims). The Complaint raises

24 allegations that attack the effectiveness of Defendants' Products and allegations

25 that the labels on Defendants' Products are misleading. Therefore, Plaintiffs have

26 sufficiently stated claims that Defendants made false and deceptive

27 misrepresentations regarding the effectiveness of the Products.

28 //

1   **2.**   ***"All Natural"***

2   Defendants also argue that Plaintiffs could not plausibly believe that the

3 Products contained solely natural ingredients. In the Complaint, Plaintiffs allege

4 that even though certain Products are labeled as "all natural," they in fact contain

5 artificial and synthetic ingredients.

6   To assess claims under consumer protection laws, California and Florida

7 courts apply the reasonable consumer test, which requires a party to establish

8 that members of the public are likely to be deceived. See Williams v. Gerber

9 Products, 552 F.3d 934, 938 (9th Cir. 2008); Moss v. Walgreen Co., 765 F. Supp.

10 2d 1363, 1367 (S.D. Fla. 2011). Here, Plaintiffs have alleged facts sufficient to

11 support their claim that a reasonable consumer would believe the Products

12 contained only natural ingredients.

13 Plaintiffs include pictures of the labeling at issue in their Complaint. (See, e.g.,

14 Compl. pp. 14, 16, 18); see also Gerber, 552 F.3d at 938 ("It is true that 'the

15 primary evidence in a false advertising case is the advertising itself.'" (quoting

16 Brockey v. Moore, 107 Cal. App. 4th 86, 100 (Cal. Ct. App. 2003))). Specifically,

17 Plaintiffs note that the packagings of certain Products state that the Products are

18 "Natural Homeopathic Medicine," and that the Products are made from "all

19 natural" ingredients. As stated in the Complaint, some Products allegedly contain

20 magnesium sterate or benzylkonium chloride, which Plaintiffs allege are artificial

21 ingredients. The labeling on the front can conceivably deceive a reasonable

22 consumer into believing the Products contain only natural ingredients. At this

23 stage of the proceedings, dismissal would be improper. See Gerber, 552 F.3d at

24 938 ("California courts . . . have recognized that whether a business practice is

25 deceptive will usually be a question of fact not appropriate for decision on

26 demurrer.")

27 //

28 //

1  For these reasons, Plaintiffs have successfully plead false advertising

2  claims. Defendants' motion to dismiss Plaintiffs' false advertising claims is

3  **DENIED**.

4

5  **B.    Injunctive Relief**

6  Defendants move to dismiss Plaintiffs' request for injunctive relief, arguing

7  that Plaintiffs lack standing because they have not demonstrated that they are in

8  danger of purchasing the Products in the future.

9  To satisfy the standing requirements under Article III, a plaintiff seeking

10  injunctive relief must demonstrate "that he has suffered or is threatened with a

11  concrete and particularized legal harm . . . coupled with a sufficient likelihood that

12  he will again be wronged in a similar way." Bates v. U.S. Parcel Serv., Inc., 511

13  F.3d 974, 985 (9th Cir. 2007) (internal quotations and citations omitted). "In a

14  class action, standing is satisfied if at least one plaintiff meets the requirements."

15  Id.

16  This Court addressed a similar Article III standing requirement in Mason v.

17  Nature's Innovation, Inc., No. 12cv3019 BTM (DHB), 2013 WL 1969957 (S.D.

18  Cal. May 13, 2013). In Mason, the Court recognized the split among Ninth Circuit

19  district courts regarding whether or not plaintiffs in consumer protection class

20  actions have standing to seek injunctive relief. Id. at *2. This Court held that a

21  plaintiff bringing a claim alleging a product is ineffective lacks standing to sue for

22  injunctive relief because the plaintiff cannot allege that he or she will purchase

23  the product again in the future. Id. at *3-4. In reaching this conclusion, this Court

24  noted that, "as important as consumer protection is, it is not within the Court's

25  authority to carve out an exception to Article III's standing requirements to further

26  the purpose of California consumer protection laws. Id. at *5.

27  Moreover, the Ninth Circuit recently addressed a standing argument nearly

28  identical to Plaintiffs' argument here. In Luman v. Theismann, No. 13cv656 KJM,

15cv2056 BTM (NLS)

1   2014 WL 443960 (E.D. Cal. Feb. 4, 2014), Judge Mueller of the Eastern District

2   held that the plaintiffs who made similar efficacy claims lacked standing to pursue

3   injunctive relief. On appeal, the Ninth Circuit affirmed Judge Mueller's standing

4   decision, stating:

5       The district court did not err in determining that Plaintiffs lack standing
        to pursue injunctive relief. To maintain standing, Plaintiffs must show a
6       sufficient likelihood that they will be injured by [defendant] again in a
        similar way and that the future injury can be redressed by injunctive
7       relief. . . . Because Plaintiffs do not allege that they intend to purchase
        [defendant's products] in the future, they cannot demonstrate a
8       likelihood of future injury.

9

10  Luman v. Theismann, No. 14-15385, 2016 WL 1393432, at *2 (9th Cir. Apr. 8,

11  2016) (unpublished decision).

12      As in Luman, the Plaintiffs here do not allege that they intend to purchase

13  the NatraBio Products again in the future. Instead, the Plaintiffs allege that the

14  Products are ineffective. Because Plaintiffs believe the Products are ineffective,

15  the Plaintiffs would not purchase them again and suffer injury. Accordingly,

16  Defendants' motion to dismiss Plaintiffs' request for injunctive relief is

17  **GRANTED**.

18

19  **C.    Punitive Damages**

20      Defendants move to dismiss Plaintiffs' request for punitive damages on the

21  ground that Plaintiffs have failed to meet the pleading requirements of California

22  and Florida law. Defendants note that California Civil Code § 3294 requires a

23  showing of "oppression, fraud, or malice" on behalf of the plaintiff in order to

24  warrant an award of punitive damages. However, "[w]hile California law governs

25  Plaintiff[s'] substantive claim for punitive damages . . . the Federal Rules of Civil

26  Procedure govern the punitive damages claim procedurally with respect to the

27  adequacy of the pleadings." Clark v. State Farm Mut. Auto. Ins. Co., 231 F.R.D

28  405, 406 (C.D. Cal. 2005). Rule 9(b) of the Federal Rules of Civil Procedure

15cv2056 BTM (NLS)

1   states that "[m]alice, intent, knowledge, and other conditions of a person's mind

2   may be alleged generally." Fed. R. Civ. P. 9(b).

3          Plaintiffs generally allege that Defendants knew the Products could not "live

4   up to the promised advertising" yet marketed the Products in many retail stores

5   regardless. (Compl. ¶ 22.) Such general allegations are sufficient under the

6   Federal Rules to survive a motion to dismiss.

7          Therefore, Defendants' motion to dismiss Plaintiffs' request for punitive

8   damages is **DENIED**.

9

10  **D.    Warranty Claims**

11         Finally, Defendants move to dismiss three of Plaintiffs' warranty claims for

12  lack of privity. Each is discussed in turn below.

13         *1.     Claim Six: Implied Warranty Under California Law*

14         To state a claim for breach of implied warranty under California law, a

15  plaintiff "must stand in vertical contractual privity with the defendant." Clemens v.

16  DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008). However, for

17  implied warranty claims, an exception has been made "in cases involving

18  foodstuffs, where it is held that an implied warranty of fitness for human

19  consumptions runs from the manufacturer to the ultimate consumer." Burr v.

20  Sherwin Williams Co., 42 Cal. 2d 682, 695 (1954). This exception has been

21  extended to drugs and pesticides. See Tapia v. Davol, Inc., 116 F. Supp. 3d

22  1149, 1159 (S.D. Cal. 2015).[1] The issue raised by the Defendants is whether or

23  not the Products must have injured the Plaintiffs in order for the exception to the

24  _____

25

26  [1] Plaintiffs additionally argue that reliance on labels or advertisements of a manufacturer is an additional exception
    to the privity requirement. However, as stated in Burr, this exception is only applicable to claims for breach of
    express warranty. See Burr, 42 Cal. 2d at 696 ("Another possible exception . . . is found in a few cases where the
27  purchaser of a product relied on representations made by the manufacturer in labels or advertising material, and
    recovery from the manufacturer was allowed on the theory of express warranty without a showing of privity."
28  (emphasis added)); see also Tapia, 116 F. Supp. 3d at 1159 (noting label exception applies only to breach of
    express warranty).

15cv2056 BTM (NLS)

1  privity requirement to apply.

2      Defendants argue that the policy considerations which motivated the

3  California Supreme Court to carve out the foodstuffs exceptions does not apply in

4  this case. Specifically, Defendants state that because the Plaintiffs were not

5  physically injured by the Products, the exception does not apply. The Court

6  agrees.

7      In <u>Klein v. Duchess Sandwich Co.</u>, 14 Cal. 2d 272 (1939), the plaintiff

8  purchased a packaged sandwich that contained maggots, which caused the

9  plaintiff to fall ill. <u>Id.</u> at 273-74. Although the defendant did not make the

10 sandwiches, the defendant offered the sandwiches for sale in their store. <u>Id.</u> On

11 the issue of privity, the California Supreme Court held that the implied warranty of

12 merchantability should extend to the ultimate consumer of a foodstuff, thereby

13 providing a remedy for "injuries which may result from the eating of unwholesome

14 food by an ultimate consumer who, under modern economic conditions, almost of

15 necessity, must purchase many items of food prepared in original packages by

16 the manufacturer and intended for the consuming public, although marketed

17 through an intermediate dealer." <u>Id.</u> at 283.

18     Like the sandwich in <u>Klein</u>, the purpose of the NatraBio Products is human

19 consumption. However, Plaintiffs are not alleging that the Products made them

20 sick, only that the Products did not work as advertised. In <u>Klein</u>, the California

21 Supreme Court recognized that most consumers do not buy their food directly

22 from the manufacturer, and therefore the requirement of privity would preclude

23 an injured consumer from a remedy against the manufacturer. Here, Plaintiffs

24 have sufficient recourse under consumer protection laws to hold Defendants

25 liable for Products that are allegedly ineffective. The Products were fit for human

26 consumption, but did not perform as advertised. Therefore, the policy behind

27 California's exception for foodstuffs should not apply in this case.

28 //

1    Accordingly, Defendants' motion to dismiss Plaintiffs sixth claim for breach

2  of implied warranty of merchantability is **GRANTED**.

3         ***2.     Claim Eight: Express Warranty Under Florida Law***

4    Florida courts seem to be at odds over whether privity of contract is

5  required to allege a claim for breach of express warranty. For example, in Hill v.

6  Hoover Co., 899 F. Supp. 2d 1259 (N.D. Fla. 2012), the court explicitly held that

7  a plaintiff must be "in privity with a defendant in order to recover for breach of

8  express or implied warranty." Id. at 1266. On the other hand, the court in Smith v.

9  WM. Wrigley Jr. Co., 663 F. Supp. 2d 1336 (S.D. Fla. 2009) held that in the case

10 where an express warranty is directed to a plaintiff-purchaser, privity is not

11 required between the urrmanufacturer and the end purchaser. Id. at 1343.

12    In Wrigley, the defendant argued that privity was required to state a claim

13 for breach of express warranty. Id. at 1338. The plaintiff alleged that the

14 defendant's gum falsely warranted to help kill germs that cause bad breath. Id.

15 Specifically, the defendant's product, Eclipse gum, stated on its packaging that it

16 was "scientifically proven to help kill the germs that cause bad breath." Id. at

17 1337. After surveying Florida law, the court held that because the alleged

18 express warranty appeared on the package of the gum, because the purchaser

19 relied on the warranty, and because the manufacturer could not rely on a

20 convenience store cashier to have knowledge about the product, privity between

21 the plaintiff and the manufacturer was not required. Id. at 1342-43.

22    In Hoover, the plaintiff sued a vacuum manufacturer for, inter alia, breach

23 of express warranty under Florida law. 899 F. Supp. 2d at 1261-62. The plaintiff

24 purchased a Hoover vacuum, which came with a manufacturer's warranty

25 against "normal defects in material workmanship," from a Wal-Mart store in

26 Florida. Id. at 1261. The court held that Florida law requires privity in order to

27 bring a claim for breach of express warranty. Id. at 1267. The court found Wrigley

28 unpersuasive and relied instead on T.W.M. v. American Medical Systems, Inc.,

15cv2056 BTM (NLS)

1  886 F. Supp. 842 (N.D. Fla. 1995) for the proposition that all breach of warranty

2  claims require privity. Hoover, 889 F. Supp. 2d at 1267. Because the plaintiff

3  purchased the vacuum from a retailer and not the manufacturer, the court

4  dismissed the plaintiff's breach of warranty claims. Id. at 1267.

5        Finally, in T.W.M v. American Medical Systems, the case relied on in

6  Hoover, the court unequivocally held that warranty claims brought under Florida's

7  version of the Uniform Commercial Code require privity. 886 F. Supp. at 844. The

8  plaintiff in T.W.M received a defective prosthetic implant, and the plaintiff brought

9  a breach of warranty claim against the implant's manufacturer. Id. The court held

10  that, because the plaintiff did not purchase the implant directly from the

11  manufacturer, the plaintiff could not establish privity and his breach of warranty

12  claims therefore failed. Id. at 844.

13        Here, Plaintiffs' claims align with those in Wrigley. Like the statements on

14  the gum's packaging in Wrigley, the Products in this case state, on their

15  packaging, that they provide natural relief from various symptoms. (See, e.g.,

16  Compl. ¶¶ 44, 51.) Given the similarities between this case and the facts of

17  Wrigley, the Court is inclined to follow the line of decisions from Florida courts

18  that hold that when an express warranty is contained on packaging directed at

19  the end-purchaser, privity is not required to state a claim for breach of express

20  warranty. See Bohlke v. Shearer's Food, LLC, No. 14-cv-80727, 2015 WL

21  249418, at *11 (S.D. Fla. Jan. 20, 2015) (following the court's reasoning in

22  Wrigley and holding that privity is not required in a breach of express warranty

23  claim); Garcia v. Kashi Co., 43 F. Supp. 3d 1359, 1388-89 (S.D. Fla. 2014)

24  (same).

25        Therefore, Defendants' motion to dismiss Plaintiffs' claims for breach of

26  express warranty under Florida Law is **DENIED**.

27  //

28  //

12

### 3.     *Claim Nine: Implied Warranty Under Florida Law*

Defendants also argue that Plaintiffs' implied warranty claims require privity. Here, courts consistently hold that "Florida law requires privity of contract to sustain a breach of implied warranty claim." Kashi Co., 43 F. Supp. 3d at 1388 (quoting David v. Am. Suzuki Motor Corp., 629 F. Supp. 2s 1309, 1321 (S.D. Fla. 2009)); see also Bailey v. Monaco Coach Corp., 350 F. Supp. 2d 1036 (N.D. Ga. 2004) (holding that privity is required under Florida law to state a claim for breach of implied warranty), aff'd 168 F. App'x 893, 894 n.1 (11th Cir. 2006).

Plaintiffs' have not plead privity of contract. Instead, Plaintiffs' state that they purchased Defendants' products from various retailers, not from the Defendants directly. Accordingly, because privity has not been established, Defendants' motion to dismiss Plaintiffs' ninth claim is **GRANTED.**

### III. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. Plaintiffs' request for injunctive relief and claims for breach of implied warranty under both California and Florida law (claims six and nine) are **DISMISSED**.

//
//
//
//
//
//
//
//
//
//

1    The Court grants Plaintiffs leave to file a First Amended Complaint ("FAC")
2  remedying the defects identified above. Plaintiffs must file their FAC within 20
3  days of the entry of this Order. If Plaintiffs do not file a FAC within 20 days,
4  Defendants must file their answer to the Complaint within 20 days after the
5  expiration of Plaintiffs' 20 days. If Plaintiffs file a FAC, Defendants shall respond
6  within 30 days of the filing of the FAC.

7

8  **IT IS SO ORDERED.**

9  Dated:  September 12, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14